FELICIA FISHER et al., Plaintiffs-Appellants, v. LEXINGTON HEALTH CARE, INC., et al., Defendants-Appellees.

Second District   No. 2—98—0072

Opinion filed December 9, 1998.

RATHJE, J., dissenting.

Terry O'Donnell, of Elmhurst, for appellants.

Robert K. Neiman, Donald R. Lorenzen, and Raquel B. DaFonseca, all of Holleb & Coff, of Chicago, for appellees.

JUSTICE RAPP delivered the opinion of the court:

Plaintiffs, Felicia Fisher and Latisha Coleman, former employees of defendant Lexington Health Care, Inc. (Lexington), filed a complaint against Lexington and defendant Carmen Necum asserting an implied statutory cause of action pursuant to section 3—608 of the Nursing Home Care Act (210 ILCS 45/3—608 (West 1996)). Plaintiffs allege that they were victims of retaliatory harassment, intimidation, and demotion as a result of their reporting of and cooperation in the investigation of an elder abuse and neglect case. The trial court dismissed plaintiffs' case pursuant to section 2—615 of the Civil Practice Law (735 ILCS 5/2—615 (West 1996)), holding that the Nursing Home Care Act (210 ILCS 45/1—101 *et seq.* (West 1996)) did not create a private cause of action for nursing home employees. The issue

presented for decision is whether the Nursing Home Care Act impliedly creates a private cause of action for nursing home employees. We conclude that the implication of such a private cause of action is suggested by the legislative context of the Nursing Home Care Act and necessary to accomplish the legislature's purposes in enacting the statute. We therefore reverse and remand.

■ Although defendants dispute the facts alleged in plaintiffs' complaint, because this case comes before us after a motion to dismiss was granted, we must accept as true the well-pleaded factual allegations but not the legal conclusions contained in plaintiffs' complaint. See *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994). Those alleged facts as necessary for this decision are repeated below.

Lexington owns and operates a nursing home located in Lombard, Illinois. Lexington is licensed by the Department of Public Health (the Department), pursuant to the Nursing Home Care Act. Defendant Carmen Necum (Necum) was employed by Lexington as its acting director.

Plaintiff Latisha Coleman (Coleman) is a licensed practical nurse who was employed by Lexington from May 1992 until October 17, 1996. Plaintiff Felicia Fisher (Fisher) is also a licensed practical nurse who was employed by Lexington from March 1992 until October 18, 1996. Throughout their employment, neither Coleman nor Fisher had ever been reprimanded or otherwise criticized about their job performance.

Plaintiffs were assigned to the same floor of Lexington's Lombard nursing home, and they were both on duty the morning of July 30, 1996. That morning, Alice Windt, an elderly resident of the nursing home, was removed from the dining room at the request of a supervisor who felt that she had been inordinately disruptive. Upon her removal from the dining room, Mrs. Windt was returned to her room, where she was left unattended with the door shut. Thereafter, a nurse's assistant discovered Mrs. Windt hanging from her lap bar. The nurse's assistant sought the assistance of plaintiffs, who immediately responded and attempted to resuscitate Mrs. Windt. Unfortunately, Mrs. Windt died.

In accordance with her duties pursuant to the Nursing Home Care Act, Coleman then began writing an incident report relating the facts and circumstances surrounding Mrs. Windt's death. As she did so, however, her supervisor demanded that she stop writing the report and take no further action until another supervisor arrived. Coleman had never before been instructed not to chart events as soon as possible.

Fisher contacted Mrs. Windt's son to inform him of her death. As she did so, however, the supervisor instructed Fisher and Coleman to have no further conversations with the Windt family. Shortly thereafter, Mrs. Windt's children arrived and inquired of Fisher and Coleman what had happened to their mother. Coleman informed Mrs. Windt's children that they could not discuss the circumstances of Mrs. Windt's death. Mrs. Windt's son later approached Coleman and Fisher privately and again asked what had happened. Fisher responded that he should order an autopsy.

Mrs. Windt's son then approached the nurse supervisor on duty but was told that he would have to wait until she finished talking to Fisher and Coleman. As he waited, the nurse supervisor summoned Coleman into her office and told her that they had to get their story straight and that they had to word the chart the right way. Coleman was further admonished to "act professional, and be a team player," because their "ass is in a sling." Coleman responded that she would not prepare a false report. As a result, Coleman was relieved of her chart-preparing duties, and the nurse supervisor prepared the incident report relating to Mrs. Windt's death, even though the supervisor had not been present. The nurse supervisor then advised Mrs. Windt's son that his mother's death appeared to have been the result of natural causes. Mrs. Windt's son then asked that an autopsy be performed on his mother's body.

Later that morning, one of Lexington's administrators, along with two supervisors, confronted Coleman and Fisher about Mrs. Windt's death and the impending investigation. Fisher and Coleman were advised not to say that when they found Mrs. Windt they found her "cold and stiff" because "it would make us look bad."

Mrs. Windt's family filed an administrative complaint with the Department against Lexington in connection with her death, and the Department investigated Mrs. Windt's death. Plaintiffs gave the Department and police officers statements and agreed to testify about Mrs. Windt's death at the coroner's inquest.

Plaintiffs allege that after they agreed to cooperate with the investigation Lexington's supervisors engaged in harassing conduct. This conduct included following them around the facility as they performed their rounds, scolding them, and berating them. They were accused of being unprofessional, doing a poor job, and working too slowly. During the pendency of the investigations, supervisors told Fisher and Coleman that they should be team players and not get anybody into trouble. Additionally, written reports that criticized their work were filed in their personnel records. Plaintiffs allege that prior to the death of Mrs. Windt no supervisor had ever criticized,

complained of, or otherwise expressed dissatisfaction with their work but, rather, they had always been praised for their efforts and job performance. Fisher was also transferred to another floor of the nursing home.

Lexington fired Fisher on October 17, 1996. On October 18, 1996, Coleman resigned, allegedly due to the work conditions imposed by Lexington. On May 12, 1997, plaintiffs filed a complaint against defendants alleging that defendants violated section 3—608 of the Nursing Home Care Act by retaliating against them for cooperating with the Department's investigation.

On August 1, 1997, Lexington filed a motion to dismiss plaintiffs' complaint pursuant to section 2—615 of the Civil Practice Law. Lexington predicated its motion to dismiss on two theories: (1) that Coleman had no cause of action for retaliatory discharge because she resigned; and (2) that the Nursing Home Care Act did not provide a private right of action for retaliatory discharge.

The parties briefed their arguments on the motion to dismiss, whereupon the trial court granted the motion. In granting the motion, the trial court concluded that no private right of action could be implied for plaintiffs under the Nursing Home Care Act. After a series of orders continuing the matter and allowing plaintiffs leave to amend their complaint, plaintiffs elected to stand on their complaint. Thereafter, the trial court entered an order dismissing plaintiffs' case with prejudice. Plaintiffs appealed.

"[N]o cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover." *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 506 (1985). As noted earlier, the allegations in the complaint are to be taken as true (see *Talbert*, 265 Ill. App. 3d at 379) and are to be interpreted in the light most favorable to the plaintiff. See *Wait v. First Midwest Bank/Danville*, 142 Ill. App. 3d 703, 705 (1986).

■ This is a case of first impression in Illinois. We are aware of no prior cases addressing the implication of a private right of action by virtue of the language of section 3—608 of the Nursing Home Care Act. Section 3—608 provides:

> "*A licensee or its agents or employees shall not transfer, discharge, evict, harass, dismiss, or retaliate against* a resident, a resident's representative, or *an employee or agent who makes a report* under Section 2—107, brings or testifies in an action under Sections 3—601 through 3—607, or files a complaint under Section 3—702, because of the report, testimony, or complaint." (Emphasis added.) 210 ILCS 45/3—608 (West 1996).

Section 3—608, however, fails to articulate any precise relief for an

employee who suffers retaliation by an employer and does not specifically authorize a private right of action.

Several Illinois statutes provide similar prohibitions against retaliatory conduct by employers. For example, section 9.1 of the Abused and Neglected Child Reporting Act provides:

"No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected child abuse or neglect, or who is or will be a witness or testify in any investigation or proceeding concerning a report of suspected child abuse or neglect." 325 ILCS 5/9.1 (West 1996).

The legislature has also recently amended the Elder Abuse and Neglect Act (320 ILCS 20/1 *et seq.* (West 1996)) to provide the following:

"No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected elder abuse, neglect, or financial exploitation or who is or will be a witness or testify in any investigation or proceeding concerning a report of suspected elder abuse, neglect, or financial exploitation." Pub. Act 90—628, § 4.1, eff. January 1, 1999 (adding 320 ILCS 20/4.1).

Additionally, section 34 of the Guardianship and Advocacy Act provides:

"A person, who in good faith, files a complaint or provides information to the Commission or any division thereof, including private citizens and employees of service providers, shall not be subject to any penalties, sanctions, or restrictions as a consequence of filing the complaint or providing the information." 20 ILCS 3955/34 (West 1996).

There are no cases interpreting section 9.1 of the Abused and Neglected Child Reporting Act. Since section 4.1 of the Elder Abuse and Neglect Act has not yet become effective, we have no case law interpreting it. Only one case, *Witt v. Forest Hospital, Inc.*, 115 Ill. App. 3d 481 (1983), has interpreted section 34 of the Guardianship and Advocacy Act.

In *Witt*, the plaintiff alleged that her employment as a nurse had been terminated because she provided information to the Guardianship and Advocacy Commission. The plaintiff alleged that her termination violated section 34 of the Guardianship and Advocacy Act. The court held that a private cause of action for retaliatory discharge may be maintained by an employee who was fired in violation of a statute protecting persons providing information to the Guardianship and Advocacy Commission. *Witt*, 115 Ill. App. 3d at 484.

In determining that such a private cause of action is necessary to uphold and implement the public policy behind the statute, the court in *Witt* found that the legislative intent in enacting the Guardianship and Advocacy Act was to " 'safeguard the rights and to provide legal counsel and representation for [the mentally ill and the developmentally disabled] ***.' [Citation]" *Witt*, 115 Ill. App. 3d at 484. The court further reasoned that "section 34 of the Act clearly establishes that the public policy of this State is to protect employees of service providers, who in good faith, provide information to the [Guardianship and Advocacy Commission]." *Witt*, 115 Ill. App. 3d at 484. The court further stated:

> "If we were to hold otherwise, the ability of the [Guardianship and Advocacy Commission] to safeguard the rights of the mentally ill and the developmentally disabled would be substantially hampered." *Witt*, 115 Ill. App. 3d at 484.

Relying on *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379 (1982), and *Sherman v. Field Clinic*, 74 Ill. App. 3d 21 (1979), the court in *Witt* stated:

> "Furthermore, we believe that an employee of a service provider is a member of a protected class for whose benefit section 34 was enacted; that implication of a private right of action for violations of section 34 is consistent with the underlying purpose of section 34 and of the Guardianship and Advocacy Act in general; that termination is an injury which section 34 was designed to prevent; and that implication of a civil private right of action is necessary to provide an adequate remedy for violations of section 34. All of these factors support the existence of a private remedy." *Witt*, 115 Ill. App. 3d at 484.

The only case in Illinois which has examined section 3—608 of the Nursing Home Care Act is *Shores v. Senior Manor Nursing Center, Inc.*, 164 Ill. App. 3d 503 (1988). In *Shores*, the plaintiff, a nursing home employee, filed a common-law action for retaliatory discharge. *Shores*, 164 Ill. App. 3d at 509. The plaintiff in *Shores* relied upon the Nursing Home Care Reform Act of 1979 (the Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 4151—101 *et seq.* (now recodified as the Nursing Home Care Act, 210 ILCS 45/1—101 *et seq.* (West 1996))) to state public policy but did not rely upon the Act to create her cause of action. *Shores*, 164 Ill. App. 3d at 509. The court stated that it did not believe that the express protections of section 3—608 were intended to diminish an employee's rights to a common-law cause of action for retaliatory discharge. *Shores*, 164 Ill. App. 3d at 509. The court further noted that "[t]he legislature has made it clear that the provisions of the Nursing Home Care Reform Act are not the exclusive means by

which a person can seek relief for situations coming under the Act." *Shores*, 164 Ill. App. 3d at 509. The court thus concluded that the plaintiff had stated a cause of action for retaliatory discharge by alleging that she was discharged for reporting instances of neglect at the facility. *Shores*, 164 Ill. App. 3d at 510.

Defendants argue that, given the *Shores* decision, Fisher could have pursued a common-law retaliatory discharge claim to redress her injuries, which would have eliminated the need for this court to analyze whether an implied private right of action exists under section 3—608 of the Nursing Home Care Act. Defendants' argument is unpersuasive. The issue in *Shores* was whether the common-law tort of retaliatory discharge was repealed by implication, not whether section 3—608 implied a private cause of action for harassment, transfer, and other retaliatory conduct of employers. Thus, the decision in *Shores* does not preclude an implied private cause of action for retaliatory conduct by employers.

The common thread between the Abused and Neglected Child Reporting Act, the Elder Abuse and Neglect Act, the Guardianship and Advocacy Act, and the Nursing Home Care Act is that each of the acts is intended to safeguard the rights of vulnerable persons of our society (*i.e.*, minors, elderly persons, mentally ill and developmentally disabled persons, and elderly residents of nursing homes). See *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 358 (1986). The General Assembly enacted the Nursing Home Care Reform Act of 1979 amid concern over reports of " 'inadequate, improper, and degrading treatment of patients in nursing homes.' [Citation.]" *Harris*, 111 Ill. 2d at 357-58. We believe that protection of our society's most vulnerable citizens "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." See *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130 (1981).

■ We are confronted here with a situation involving employer retaliation against "whistle blowers." A whistle-blower is an employee who refuses to engage in and/or reports the employer's violations of laws or regulations pertaining to public safety or the general welfare. See Black's Law Dictionary 1596 (6th ed. 1990); see also *Wheeler*, 108 Ill. 2d at 510-11. As our supreme court stated in *Wheeler* and *Palmateer*, " '[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens.' " *Wheeler*, 108 Ill. 2d at 511; *Palmateer*, 85 Ill. 2d at 132. "The protection of the lives and property of citizens *** is as important and fundamental as protecting them from crimes of violence ***." *Wheeler*, 108 Ill. 2d at 511.

■ Section 2—107 of the Nursing Home Care Act provides that it

is the duty of any facility employee who becomes aware of abuse or neglect to report it as provided in the Abused and Neglected Long Term Care Facility Residents Reporting Act (210 ILCS 30/1 *et seq.* (West 1996)). 210 ILCS 45/2—107 (West 1996). The failure to report abuse or neglect could subject nursing home employees to criminal prosecution. See 210 ILCS 30/4 (West 1996). Additionally, a nursing license could be revoked or suspended or the nurse placed on probation, reprimanded, or otherwise disciplined for failure to report abuse or neglect. See generally 225 ILCS 65/25 (West 1996). Employees who fail to comply with the Nursing Home Care Act would also be subject to dismissal by their employer.

Enforcement of the Nursing Home Care Act depends on vigilant employees, who watch over their residents and facilities, assure their compliance with the Nursing Home Care Act, report abuses, and cooperate with any investigation and court proceedings related to the enforcement of the Nursing Home Care Act. Failing to protect employees from retaliatory conduct by employers would have a chilling effect on the cooperation of nursing home employees.

Section 3—608 of the Nursing Home Care Act makes it unlawful to transfer, discharge, evict, harass, dismiss, or retaliate against an employee who reports and cooperates in the investigation of an elder abuse and neglect case. Thus, if plaintiffs were transferred, discharged, evicted, harassed, dismissed, or retaliated against as a consequence of their reporting, testifying, or filing a complaint concerning elder abuse and neglect of a nursing home resident, they are entitled to any protection provided by section 3—608. See *Witt*, 115 Ill. App. 3d at 483-84.

While section 3—318 of the Nursing Home Care Act provides sanctions for an employer that engages in retaliatory conduct against an employee who reports violations of the Nursing Home Care Act (210 ILCS 45/3—318 (West 1996)), it does not specifically afford any relief to an employee who bears the brunt of retaliatory conduct, including harassment, intimidation, degradation, demotion, and transfer. Thus, there is no incentive to "blow the whistle" on an employer who has violated the Nursing Home Care Act.

■ Although Illinois cases have recognized an implied civil private right of action for retaliatory discharge, Illinois has not recognized an implied statutory cause of action for any injury short of actual discharge. However, no case has been raised under the unique context of the Nursing Home Care Act and its specific prohibitions against retaliatory conduct.

Our supreme court in *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29 (1994), refused to imply a new cause of action for retaliatory demotion in a workers' compensation case because the plaintiff failed

to present a compelling showing of the necessity to create such a cause of action. We believe the plaintiffs in this case should have the opportunity to present their case.

In conclusion, we believe that (1) retaliatory conduct by employers against employees who report and cooperate in the investigation of elder abuse and neglect cases contravenes the public policy of this State to safeguard the rights of nursing home residents; (2) employees of nursing home facilities are members of a protected class for whose benefit section 3—608 was promulgated; (3) retaliatory conduct is an injury which section 3—608 was designed to prevent; (4) the implication of a civil private right of action is necessary to provide an adequate remedy for violations of section 3—608 and is consistent with the underlying purpose of section 3—608 and the Nursing Home Care Act in general; and (5) section 3—714 (210 ILCS 45/3—714 (West 1996)) clearly indicates that the remedies available are not limited to those enumerated in the Nursing Home Care Act. See *Sawyer Realty*, 89 Ill. 2d at 391; and *Witt*, 115 Ill. App. 3d at 484.

For the foregoing reasons, the order of the circuit court of Du Page County dismissing plaintiffs' complaint is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER, P.J., concurs.

JUSTICE RATHJE, dissenting:

I respectfully dissent. It is unfortunate that the majority has chosen not to address the implications of our supreme court's decision in *Zimmerman* in the context of the present case. Instead, the majority limits its discussion of *Zimmerman* to distinguishing it on the basis that the plaintiff there failed to make a compelling case for the creation of a cause of action for retaliatory demotion and that the plaintiffs in this case deserve an opportunity to present their case. Just as in the present case, in *Zimmerman* the plaintiff's lawsuit was dismissed for failure to state a cause of action. *Zimmerman*, 164 Ill. 2d at 31. The supreme court felt no need to allow Ms. Zimmerman the opportunity to develop her case as the majority is permitting the plaintiffs to do in the present case. Moreover, I am of the opinion that in *Zimmerman* our supreme court was sending a clear message that the creation of a new right under a statute, such as the one in the case before us, is a matter best left to the legislature. *Zimmerman*, 164 Ill. 2d 29.

Based upon *Zimmerman*, I would conclude that this court should

not imply a private cause of action for retaliatory conduct under the Nursing Home Care Act where the legislature has not provided such a cause of action, and, therefore, I dissent.