(No. 86904.—

FELICIA FISHER *et al.*, Appellees, v. LEXINGTON
HEALTH CARE, INC., *et al.*, Appellants.

*Opinion filed December 16, 1999.*

RATHJE, J., took no part.
HARRISON, J., dissenting.

Robert K. Neiman, Donald R. Lorenzen and Raquel daFonseca, of Holleb & Coff, of Chicago, for appellants.

Terry O'Donnell, of Elmhurst, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

The plaintiffs, Felicia Fisher and Latisha Coleman, filed this action in the circuit court of Du Page County against their former employer, nursing home operator Lexington Health Care, Inc. (Lexington), and Carmen Necum. The plaintiffs sought to imply a private right of action under section 3—608 of the Nursing Home Care Act (Act) (210 ILCS 45/3—608 (West 1996)) for retaliatory conduct by a nursing home against its employees. The circuit court granted the defendants' motion to dismiss the complaint for failure to state a cause of action. The appellate court reversed. 301 Ill. App. 3d 547. We now affirm the circuit court and hold that there is no implied private right of action for nursing home employees under section 3—608 of the Nursing Home Care Act.

## FACTS

This case comes to us from the circuit court's dismissal of the plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). The following factual allegations, taken from the plaintiffs' complaint, must therefore be accepted as true for purposes of this appeal.

The plaintiffs each worked as licensed practical nurses for Lexington at its Lombard, Illinois, nursing home facility. Defendant Carmen Necum was an acting director of that facility. On July 30, 1996, Alice Windt, an elderly resident of the nursing home, was left alone in her room by nursing home personnel. She was later discovered by a nurse's assistant hanging from her bed, stuck under her lap bar. The plaintiffs were both on duty when Mrs. Windt was discovered. They found Mrs. Windt with no pulse and efforts to resuscitate her failed. Coleman began writing an incident report concerning Mrs. Windt's death, but was instructed by her supervisor to stop writing the report and to take no further action until another supervisor arrived. The supervisor also instructed both Fisher and Coleman to have no conversations with the Windt family. When the family arrived and asked Fisher and Coleman what had happened, Fisher and Coleman informed the family that they could not discuss the circumstances of their mother's death. Later, however, Mrs. Windt's son approached the plaintiffs privately, and Fisher told him that he should order an autopsy.

The nurse supervisor then summoned Coleman into her office and told her that "they have to get their story straight," and that "they have to word the chart the right way." The supervisor further admonished Coleman to "act professional, and be a team player, because their ass is in a sling." Coleman told the supervisor that she would not prepare a false report. As a result, the supervisor prepared the incident report herself. The supervisor

then informed Mrs. Windt's son that his mother's death appeared to have been the result of natural causes.

Shortly thereafter, the Windt family filed a complaint with the Illinois Department of Public Health (Department) against Lexington alleging violations of the Nursing Home Care Act. In conjunction with this complaint, Coleman and Fisher provided statements to Department investigators, Lombard police officers and the Du Page County coroner's office.

After Coleman and Fisher cooperated with the investigations into Mrs. Windt's death, they allegedly began to be subjected to harassment by their supervisors. Two nursing supervisors followed Coleman and Fisher around the facility as they performed their work, scolding and berating them. They were accused of being unprofessional, of doing a poor job, and of working too slowly. In addition to this harassment, defendant Carmen Necum prepared reports criticizing the plaintiffs' work. Throughout most of this period, Coleman and Fisher continued to work together. On October 14, 1996, however, Fisher was transferred to duties on another floor. Three days later, on October 17, 1996, Fisher was fired. Coleman resigned the next day, allegedly as a result of the continued harassment and intimidation.

On May 12, 1997, Coleman and Fisher filed this action against Lexington, Necum, and other defendants. The sole count of the complaint purported to allege an implied private right of action for damages pursuant to section 3—608 of the Nursing Home Care Act. The plaintiffs sought damages under this section for the defendants' alleged retaliatory conduct, which culminated in Fisher's discharge and Coleman's resignation.

The defendants moved to dismiss the complaint for failure to state a cause of action. The circuit court granted the motion, ruling that no private right of action could be implied for these plaintiffs under the Nursing

Home Care Act. The circuit court granted the plaintiffs leave to amend their complaint. The plaintiffs did not file an amended complaint.

The appellate court reversed, with one justice dissenting. 301 Ill. App. 3d 547. The appellate court majority held that section 3—608 implied a private right of action for retaliatory conduct by a nursing home against its employees.

We allowed the defendants' petition for leave to appeal. 177 Ill. 2d R. 315. We now reverse the judgment of the appellate court.

## ANALYSIS

The plaintiffs seek to pursue an action for damages under section 3—608 of the Nursing Home Care Act. Section 3—608 of the Act provides as follows:

"A [nursing home facility] licensee or its agents or employees shall not transfer, discharge, evict, harass, dismiss, or retaliate against a resident, a resident's representative, or an employee or agent who makes a report under Section 2—107, brings or testifies in an action under Sections 3—601 through 3—607, or files a complaint under Section 3—702, because of the report, testimony, or complaint." 210 ILCS 45/3—608 (West 1996).

Section 2—107 requires agents and employees of nursing home facilities who become aware of abuse or neglect of a resident to report that abuse to the Department. 210 ILCS 45/2—107 (West 1996). Sections 3—601 through 3—607 address the right of nursing home residents to sue for damages and other relief. 210 ILCS 45/3—601 through 3—607 (West 1996). Section 3—702 sets forth the procedures for requesting an investigation by the Department into suspected violations of the Act. 210 ILCS 45/3—702 (West 1996).

Section 3—608 does not expressly grant nursing home employees the right to seek damages for a violation of this provision. Neither does any other provision of the Act expressly provide nursing home employees with the

right to pursue an action for damages under section 3—608. The lack of such explicit language, however, is not necessarily dispositive. A court may determine that a private right of action is implied in a statute. *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 308 (1992); *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 386-87 (1982). The plaintiffs contend that section 3—608 implies a private right of action for nursing home employees who are retaliated against by their employer.

This court has delineated four factors to be considered in determining if a private right of action may be implied from a statute. Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Rodgers*, 149 Ill. 2d at 308; *Corgan v. Muehling*, 143 Ill. 2d 296, 312-13 (1991).

Applying these factors, we conclude that section 3—608 of the Act does not imply a private right of action for nursing home employees who are retaliated against by their employer. Plaintiffs are not members of the class which the Act was enacted to protect and their injuries are not the type the statute was designed to prevent. Moreover, implying a private cause of action under the Act for retaliatory conduct is not necessary to provide an adequate remedy for violations of the Act.

The General Assembly enacted the Act in 1979 "amid concern over reports of 'inadequate, improper and degrading treatment of patients in nursing homes.' " *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 357-58 (1986), quoting Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statement of Senator Berning). A

review of the Act's provisions reveals that it was not designed to protect nursing home employees, nor to provide them with actions for retaliatory conduct.

The Act created a comprehensive scheme intended to improve the care and treatment of nursing home residents. See generally R. Daley & D. Jost, *The Nursing Home Reform Act of 1979*, 68 Ill. B.J. 448 (1980). A principal component of the Act was the residents' "bill of rights," under which nursing home residents were guaranteed certain rights, including the right to manage their own finances, the right to refuse treatment, and the right to be free from abuse and neglect by nursing home personnel. 210 ILCS 45/2—101 through 2—113 (West 1996); see also *Harris*, 111 Ill. 2d at 358. The Act also established certain responsibilities of nursing home facilities. 210 ILCS 45/2—201 through 2—212 (West 1996). Among those responsibilities were the requirement that a written contract be executed between the facility and each resident, specifying the services and care that the facility will provide, and requirements for the management of residents' funds. 210 ILCS 45/2—202, 2—201 (West 1996). The Act also established minimal occupational requirements and training for nurses' aides in an effort to improve the care rendered by this segment of nursing home staff. See 210 ILCS 45/3—206 (West 1996); see also 68 Ill. B.J. at 452-53.

The legislature took several steps to ensure that nursing homes complied with the Act. The Act gave the Department expanded regulatory and enforcement powers, and created civil as well as criminal penalties. See, *e.g.*, 210 ILCS 45/3—119, 3—301 through 3—318 (West 1996); see also *Harris*, 111 Ill. 2d at 358. In addition, the Act expressly gave nursing home residents a private cause of action for damages and other relief against nursing home owners and operators who violate the Act's provisions. 210 ILCS 45/3—601, 3—602, 3—603 (West 1996).

The provisions of the Act reveal that it was not designed to protect nursing home employees such as the plaintiffs. Rather, the Act was clearly enacted for the purpose of protecting and benefitting nursing home *residents*. The Act represented the legislature's response to reports of improper treatment of patients in nursing homes. Consequently, the Act's provisions were designed to improve the care and services received by such residents. The plaintiffs, therefore, are not within the class of persons the Act was enacted to protect.

Likewise, the plaintiffs did not suffer the type of injuries that the General Assembly intended the Act to prevent. The Act's provisions show that the Act was intended to prevent abuse and neglect of nursing home residents as well as other violations of residents' rights. The Act both guaranteed residents a litany of rights and gave residents the right to sue a facility for damages and other relief if those rights were violated. The Act was not enacted to provide a damages remedy for nursing home employees who are subjected to retaliatory conduct by a nursing home.

The plaintiffs contend, however, that they are within the class that section 3—608 was designed to protect and that their injuries are those which section 3—608 was designed to prevent. As the plaintiffs point out, section 3—608 prohibits retaliation by a nursing home against, *inter alia*, employees who report abuse or neglect of a resident, or who aid in the investigation of such a report. 210 ILCS 45/3—608 (West 1996). The plaintiffs assert that section 3—608 was designed to protect nursing home employees, such as themselves, who suffer retaliation as a result of aiding an investigation of their employer. We do not agree that section 3—608 places the plaintiffs within the class the Act was enacted to protect.

First, the plaintiffs' argument erroneously focuses on one single provision of the Act, rather than looking at

the statute as a whole. In interpreting legislative enact-
ments, courts must read the statute as a whole, not as
isolated provisions. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d
178, 189 (1990). The circuit court properly evaluated the
entire Act and concluded:

> "The Act *as a whole* is a comprehensive legislative scheme
> to regulate the operation of nursing homes. Its articles
> deal with the Rights and Duties of the residents and the
> facilities, and with Licensing, Enforcement, Violations,
> Penalties, and Remedies available. The *intent* of the Act is
> clearly the *protection of residents*, and while as plaintiff
> suggests, encouragement of complete honesty and candor
> among employees of nursing homes certainly is consistent
> with the underlying purposes of the Act, the plaintiffs here
> are not among that class of persons that this Act was
> designed to protect—nursing home residents." (Emphasis
> in original.)

We agree that, when the Act is viewed as a whole, it is
clear that the Act was not designed to protect nursing
home employees from retaliatory conduct. The fact that
section 3—608 prohibits retaliation against nursing home
employees who report mistreatment of residents does not
alter this conclusion. Section 3—608, although it does
serve to protect nursing home employees from retalia-
tion, does so to advance the Act's central purpose of
protecting residents by encouraging employees who
become aware of mistreatment to report that mistreat-
ment.

Moreover, as defendants point out, section 3—608
does not speak only of retaliation by a nursing home fa-
cility against an employee. Rather, the express language
of section 3—608 prohibits retaliation *by* a facility *"or its
agents or employees."* (Emphasis added.) 210 ILCS 45/
3—608 (West 1996). Section 3—608 thus recognizes that
nursing home employees themselves might be the
perpetrators of retaliation. Further, section 3—608
protects not just employees who report mistreatment of
residents, but also residents and residents' representa-

tives who make such reports. See 210 ILCS 45/3—608 (West 1996). The express language of section 3—608 therefore reveals that this section is not primarily concerned with protecting nursing home employees from retaliatory conduct by their employers. To the contrary, section 3—608, like the remainder of the Act, seeks first and foremost to protect nursing home residents.

Accordingly, we conclude that the Act was not intended to protect these plaintiffs nor to prevent the injuries they allegedly suffered. Two of the factors for implying a private right of action under a statute are therefore lacking. We find that a third factor is lacking as well. It is not necessary to imply a private right of action under section 3—608 for nursing home employees in order to provide an adequate remedy for violations of the Act.

This court recently observed that we have implied a private right of action under a statute only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied. *Abbasi v. Paraskevou-lakos*, 187 Ill. 2d 386, 395 (1999). As the circuit court here noted, while encouragement of honesty and candor among nursing home employees is certainly consistent with the underlying purpose of the Act, it is not necessary to imply a private right of action for employees in order to achieve that purpose. A multitude of sanctions and remedies exist to accomplish the Act's goal of protecting nursing home residents. In addition, the Act contains numerous mechanisms to encourage the reporting of violations of the Act and to prevent and punish retaliation against those who make such reports.

First, as discussed above, the Act expressly grants nursing home residents the right to pursue actions for damages, and other relief, against nursing home facilities. Section 3—601 provides that owners and operators of facilities are liable to a resident for injuries caused by

the intentional or negligent acts of their employees or agents. 210 ILCS 45/3—601 (West 1996). Section 3—602 makes operators liable for damages to nursing home residents whose rights under the Act are violated. 210 ILCS 45/3—602 (West 1996). Section 3—603 specifies that a resident may maintain an action under the Act for any other type of relief permitted by law. 210 ILCS 45/3—603 (West 1996). The rationale for granting private remedies to nursing home residents was explained by one of the Act's sponsors as follows: " '[D]espite the best of intentions, the government can only do so much to regulate nursing home care. On the other hand, residents are always in the facilities and their friends, relatives and community supporters can regularly keep an eye on the conditions existing in facilities.' " *Harris*, 111 Ill. 2d at 359, quoting 68 Ill. B.J. at 453. We note that the Act's express grant of a private action for damages to residents suggests that the legislature did not intend to give a private action for damages to employees. See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997) (noting the rule of construction that, where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions).

In addition to allowing residents to pursue private actions against facilities, the Act also gives the Department the power to punish nursing homes that violate its provisions. The Department is mandated by the Act to conduct inspections of every facility to determine compliance with the Act's provisions. 210 ILCS 45/3—212(a) (West 1996). Under section 3—305, a facility that is in violation of the Act or any rule promulgated thereunder may be subject to penalties or fines levied by the Department. 210 ILCS 45/3—305 (West 1996). Each day that a violation exists after the facility has been given notice of it constitutes a separate violation for the purpose of assessing penalties or fines under section 3—305. 210 ILCS

45/3—302 (West 1996). Section 3—305 also requires license revocation for a facility that repeatedly commits certain types of violations. 210 ILCS 45/3—305(3) (West 1996). Further, under section 3—119(1), the Department may suspend or revoke a facility's license when there has been a "substantial failure to comply with this Act." 210 ILCS 45/3—119(1) (West 1996).

The Act also provides a mechanism under which any person who suspects that a nursing home is violating the Act may require a Department investigation. Section 3—702(a) provides that any person who believes that the Act or a rule promulgated thereunder has been violated may request an investigation by the Department. 210 ILCS 45/3—702(a) (West 1996). The Department is then required to investigate, within a prescribed time period, and determine whether a provision of the Act or a rule has been or is being violated. 210 ILCS 45/3—702(d) (West 1996). Section 3—702 further provides that a complainant who is dissatisfied with the determination or investigation by the Department may request a hearing, which the Department must conduct within a prescribed time period. 210 ILCS 45/3—702(g) (West 1996).

Finally, sections 3—318(a)(1) and (a)(2) of the Act prohibit any person from, *inter alia*, intentionally failing to correct certain types of violations or intentionally impeding any investigation or enforcement of the Act. 210 ILCS 45/3—318(a)(1), (a)(2) (West 1996). Such conduct is a business offense punishable by a fine of up to $10,000. 210 ILCS 45/3—318(b) (West 1996).

Thus, the Act expressly provides numerous sanctions and remedies to accomplish its goal of protecting nursing home residents. A nursing home that violates the Act may be liable for damages to a resident, and may be subjected to penalties, including heavy fines and license suspension or revocation.

The Act also provides a sanction designed specifically to protect persons, including employees, who aid in the discovery and investigation of mistreatment of residents. Section 3—318 provides that it is a business offense, punishable by a fine of up to $10,000, for any person to "intentionally retaliate or discriminate against any resident or employee for contacting or providing information to any state official, or for initiating, participating in, or testifying in an action for any remedy authorized under this Act." 210 ILCS 45/3—318(a)(5), (b) (West 1996). Accordingly, under the Act's express provisions, retaliation against a nursing home employee may result in severe sanctions. The General Assembly thus recognized the role that nursing home employees can play in preventing abuse and neglect of residents and the retaliation such employees might suffer as a result. The legislature provided a statutory framework to encourage reporting of violations and to punish retaliation. The legislature could have gone further and granted employees a private action for damages, but it did not do so. We cannot say that the statutory framework the legislature did provide is so deficient that it is necessary to imply a private right of action for employees in order to effectuate the purpose of the Act.

In this regard, we note that this court has consistently sought to restrict the common law tort of retaliatory discharge. See *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 19-20 (1998) (and cases cited therein). We have repeatedly emphasized that, "[t]he common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525 (1985); see also *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159 (1992); *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991). Notably, this

court has thus far declined to recognize a cause of action for retaliatory constructive discharge or retaliatory demotion. See *Zimmerman v. Buchheit of Sparta, Inc.,* 164 Ill. 2d 29, 38-40 (1994) (plurality opinion); *Hartlein,* 151 Ill. 2d at 161, 163. Although this case does not involve the common law tort of retaliatory discharge, these decisions are nonetheless instructive on the question presented in this case. Given this court's reluctance to expand the common law in this area, we must also hesitate to imply such actions under a statute without explicit legislative authority.

We therefore hold that section 3—608 of the Nursing Home Care Act does not imply a private right of action for nursing home employees who are retaliated against by their employer. The circuit court thus correctly dismissed the plaintiffs' complaint for failure to state a cause of action.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court, which reversed the circuit court's judgment dismissing the plaintiffs' complaint. The circuit court's dismissal of the plaintiffs' complaint is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting:

In his special concurrence in *Zimmerman v. Buchheit of Sparta, Inc.,* 164 Ill. 2d 29, 47-48 (1994), Justice Bilandic argued that courts should not recognize a private right of action for damages based on violation of a statute if the General Assembly has not included such a remedy in the statute itself. Justice Rathje, who was on the appellate court panel which considered this case, echoed

that view in his dissenting opinion. 301 Ill. App. 3d 547, 556-57 (Rathje, J., dissenting). With today's decision, their view has attained the force of law. For all practical purposes, implied rights of action have been abolished in Illinois.

Such a result was foretold by our court's recent decision in *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386 (1999). In that case, my colleagues refused to allow the plaintiff to assert a claim for damages based on defendants' violation of Chicago's Municipal Code even though the law expressly authorized the type of damage claim she asserted. *Abbasi*, 187 Ill. 2d at 403-04 (Harrison, J., dissenting). The court offered no rationale for that portion of its ruling, but the effect was clear: if express private rights of action for violations of the law are no longer permissible, implied private rights of action will not be recognized either.

The court's new direction marks a radical departure from past precedent. Since the middle of this century, we have continually been willing to imply a private remedy to give effect to a particular statute. *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302 (1992) (implied right for damages for violation of X-Ray Retention Act); *Corgan v. Muehling*, 143 Ill. 2d 296 (1991) (implied right of action for nuisance under the Psychologist Registration Act); *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379 (1982) (implied right of action under Real Estate Brokers and Salesmen License Act); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978) (implied right of action for retaliatory discharge for employees who are terminated because they filed a claim under the Workers' Compensation Act); see *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 155 (1955) ("[w]hen a statute is enacted for the protection of a particular class of individuals, a violation of its terms may result in civil as well as criminal liability, even though the former remedy is not specifically

mentioned therein"). This precedent has served Illinois well, and I strongly believe that we should continue to adhere to it.

I have but one vote on this court. If my colleagues are intent on changing the law, I am powerless to stop them. I believe it is incumbent upon them, however, to be forthright about what they are doing. When they invoke the precedent, then proceed to contort it to reach the result they want, as they have done here and in *Abbasi*, they serve no one's interests.

If I am wrong about my colleagues' motives and they do not, in fact, intend to abrogate the doctrine of implied private rights of action, their decision in this case is untenable. Their contention that section 3—608 of the Nursing Home Care Act (210 ILCS 45/3—608 (West 1996)) "was not designed to protect nursing home employees" (188 Ill. 2d at 461) defies reason. The authoring justice himself recently reminded us that the best indication of legislative intent is the plain meaning of the language used by the legislature in drafting a statute. *Weatherman v. Gary-Wheaton Bank of Fox Valley*, 186 Ill. 2d 472, 486 (1999). The language of section 3—608 evinces a clear and unambiguous intention by the General Assembly to protect nursing home employees from the sort of retaliation alleged in this case. The statute expressly provides that nursing homes are prohibited from harassing, dismissing or retaliating against employees who report the abuse or neglect of a resident to the Illinois Department of Public Health. How could the General Assembly have made the point any clearer?

Equally bewildering is my colleagues' statement that they "hesitate to imply *** actions under a statute without explicit legislative authority." 188 Ill. 2d at 468. If there were explicit legislative authority for a private right of action, there would be no need to *imply* a right of action. The right of action would be express, and the

only question would be whether plaintiffs met the statute's requirements for recovery.

The only time courts need to evaluate whether a cause of action should be implied under a statute is where, as here, the law does not specifically authorize a civil action for damages. In making this evaluation, the relevant inquiry is whether (1) plaintiff is a member of the class for whose benefit the statute was enacted, (2) recognition of a private right of action is consistent with the underlying purpose of the statute, (3) plaintiff's injury is one the statute was designed to prevent, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Noyola v. Board of Education*, 179 Ill. 2d 121, 131 (1997).

These factors were correctly applied by the appellate court when it held that the circuit court had erred in dismissing plaintiffs' complaint for failure to state a cause of action. In overturning the appellate court's judgment, the majority makes much of the fact that the Nursing Home Care Act includes various statutory sanctions and remedies to help accomplish its purposes. It is true that such sanctions and remedies exist. It is also true, however, that the existence of regulatory enforcement procedures and statutorily defined remedies is not dispositive. A private right of action for compensatory damages may still be implied if the express remedies available under the law are inadequate to redress the injuries the plaintiffs have sustained. *Sawyer Realty Group, Inc.*, 89 Ill. 2d at 389-91.

The residents of nursing homes are among our weakest and most vulnerable citizens. The General Assembly enacted the Nursing Home Care Act to help protect them against inadequate, improper and degrading treatment. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 357-58 (1986). My colleagues believe that this objective will be adequately served through provisions in the law allowing

nursing home residents the right to seek redress themselves. As I consider Mrs. Windt's lifeless body hanging from the lap bar in her bed, this notion strikes me as profoundly misguided. According to the record, Mrs. Windt was so disruptive that she could not eat with other residents and so infirm that she could not manage to extricate herself from her own bed. Even if she had survived, I cannot imagine how she could possibly have pressed a civil lawsuit under the Nursing Home Care Act.

Mrs. Windt was lucky in one regard. She had family members to look in on her. Many nursing home residents are not so fortunate. They are alone, separated by death or geography or circumstance from their spouses, families and friends. As age takes its inevitable toll, they may scarcely recall who they are or where they are. Feelings of helplessness and disorientation develop. Dependency increases.

To the extent that residents remain capable of voicing dissatisfaction with their treatment, their desire for redress may be overshadowed by fears of retaliation. In Butler, *Nursing Home Quality of Care Enforcement: Part I—Litigation by Private Parties*, 14 Clearinghouse Rev. 622, 647 (1980), an article we cited in *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 360 (1986), the point was aptly made:

> "[N]ursing home residents are timorous plaintiffs—they are under the total physical control of the very operators whom they seek to sue; with advanced age and/or physical debility, they are easily intimidated and are easy victims of retaliation, which may be violent abuse or subtle withholding of privileges and assistance. State laws prohibiting retaliation against residents for filing complaints have not been effective; they generally empower state officials to act, but few do so. It is often difficult, if not impossible, to encourage nursing home residents, even after they complain to advocates, to come forward formally to file suit."

If residents will not or cannot speak up for them-

selves, who will speak up for them? In most cases, the only other people who know what is going on in nursing homes and are in a position to do anything about it are the facilities' employees. They are on site day in and day out. They observe what happens when visiting hours are over and outsiders have left the premises. They see what the inspectors cannot see. Their concern and vigilance are therefore integral to the Nursing Home Care Act's effectiveness.

I realize that employees have a statutory duty to report the abuse or neglect of nursing home residents. 210 ILCS 45/2—107 (West 1996). In practice, however, even the most conscientious employees will be hesitant to step forward if doing so will jeopardize their jobs. That is why the General Assembly has decreed in section 3—608 of the Act that retaliation against employees is prohibited.

When the plaintiffs in this case disclosed the horrible truth of Mrs. Windt's death and cooperated with the official investigation of the case, they had every right to believe that the law would protect them. What they experienced instead was harassment and intimidation. According to their complaint, one of them was fired and the other was forced from her job. This is precisely the sort of thing the Nursing Home Care Act was intended to prevent.

It is no answer to say, as my colleagues do, that the Act "contains numerous mechanisms to encourage the reporting of violations *** and to prevent and punish retaliation against those who make such reports." 188 Ill. 2d at 464. For an underpaid, overworked employee who has just been fired for doing her duty under the law, the possibility that the employer may eventually have to respond to an administrative complaint or pay a monetary fine is scant consolation. Employees must be allowed redress in the courts for themselves. If they are

not, the consequences are easy to foresee. Employees will protect themselves by looking the other way. Abuses will not be noted. Relatives will not be contacted. Reports will not be filed. Patients will simply be left to suffer and to die.

Being on this court does not confer immunity from age and enfeeblement. All of us may one day find ourselves confined to a nursing home under the care and control of hired caregivers. If that should happen to my colleagues, I only hope that their fate is kinder than the one suffered by Mrs. Windt.

The judgment of the appellate court should be affirmed. I therefore dissent.