# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Tunca v. Painter*, 2012 IL App (1st) 110930

---

| | |
|---|---|
| Appellate Court Caption | JOSH TUNCA, Plaintiff-Appellant, v. THOMAS A. PAINTER, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-0930 |
| Filed | November 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The confidentiality provisions of the Medical Studies Act did not apply to the statements defendant surgeon made to other physicians about an incident in which plaintiff cut a patient's artery during a surgical procedure, and summary judgment was properly entered for defendant in plaintiff's action alleging that defendant violated the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-6700; the Hon. James D. Egan, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Christian J. Cosentino, of Cosentino Law Firm, of St. Charles, for appellant. |
| | |
| | Hugh C. Griffin, Eric P. Schoonveld, Thomas M. Comstock, and Stevie A. Starnes, all of Hall Prangle & Schoonveld, LLC, of Chicago, for appellee. |
| | |
| Panel | JUSTICE TAYLOR delivered the judgment of the court, with opinion. |
| | Presiding Justice McBride and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Dr. Josh Tunca, appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendant, Dr. Thomas Painter, on count II of his third amended complaint, which alleged that defendant's statements to other doctors about plaintiff's performance violated the confidentiality provisions of section 8-2101 of the Code of Civil Procedure, commonly referred to as the Medical Studies Act (Act) (735 ILCS 5/8-2101 *et seq.* (West 2010)). Plaintiff contends that he has a private right of action for defendant's violation of the Act and that, contrary to the trial court's findings, defendant's statements to other doctors about plaintiff's performance were privileged under the Act.

¶ 2                                    BACKGROUND

¶ 3    Plaintiff, a surgeon who specializes in gynecological oncology at Northwest Community Hospital, filed a complaint, which was amended three times, against defendant and Dr. Daniel Conway, who is not a party to this appeal. Each version of that complaint alleged, and the parties do not dispute, that on or about June 24, 2006, plaintiff surgically removed an ovarian tumor, and that shortly after surgery, the patient lost pulse in her left leg due to a clot in her femoral artery. Defendant, a vascular surgeon, was then called to perform a femoral-femoral bypass on the patient to restore the blood flow in her leg.

¶ 4    The complaint further alleged that on or about June 28, 2006, defendant approached Dr. John McGillan, the vice-president and medical affairs director for the hospital, and told him that plaintiff had cut the patient's left iliac artery during her first operation. Defendant thereafter stated, in the course of his work at the hospital and in the company of numerous other doctors and medical personnel, including Dr. Robert Glass, that plaintiff had negligently and inadvertently severed the patient's artery. According to the complaint, none of the doctors to whom defendant spoke was a member of any peer review committee for the hospital, and therefore, his statements constituted disclosure of privileged information in violation of the Act. Plaintiff alleged that defendant's statements became widely

-2-

disseminated throughout the hospital and that, as a result of defendant's violation of the Act, plaintiff was injured in his professional reputation and lost patients from referral sources, which, in turn, caused a substantial decrease in his income.

¶ 5 In addition to his claim of violation of the Act, plaintiff initially alleged that defendant's statement constituted slander *per se*, but in his third amended complaint, he changed his theory to slander *per quod*. Plaintiff's complaints included similar claims of slander *per se*, slander *per quod* and violation of the Act by Dr. Conway, based on that doctor's own statements which are not pertinent to this appeal. The circuit court dismissed all counts against Dr. Conway and the counts of slander against defendant, thereby disposing of all issues other than the alleged violation of the Act by defendant. On appeal from that order, this court held in *Tunca I* that plaintiff's third amended complaint sufficiently alleged slander *per quod* against both doctors, but all other dismissed claims had been forfeited. *Tunca v. Painter*, 2012 IL App (1st) 093384 (*Tunca I*).

¶ 6 On July 23, 2010, while the appeal was pending in *Tunca I*, defendant filed a motion for summary judgment on the remaining count of plaintiff's third amended complaint, for defendant's alleged violation of the Act. In that motion, defendant alleged that there is no private right of action for an alleged violation of the Act because plaintiff is not a member of the class of persons that the statute was enacted to benefit and his alleged injury was not one that the Act was designed to prevent. He further argued that a private right of action is unnecessary to carry out the purposes of the Act or to encourage compliance because the Act provides for criminal sanctions and penalties. Alternatively, defendant argued that there was insufficient evidence of a causal connection between defendant's statements and plaintiff's reduction in patient referrals and income. Lastly, defendant claimed that his alleged statements to other doctors took place outside of any peer review process and, therefore, the confidentiality provision of the Act did not apply.

¶ 7 Attached to defendant's motion for summary judgment was plaintiff's discovery deposition, in which plaintiff acknowledged that defendant's statement to Dr. McGillan took place prior to any peer review or committee action and was "outside of peer review" because "nothing had started" at that time. Plaintiff further acknowledged that a committee meeting on this incident took place in February 2007, and that he participated in a peer review meeting in March or April of that year. He stated that defendant, who is a member of the surgical quality review committee, was present at that second meeting.

¶ 8 On October 14, 2010, the circuit court granted summary judgment in favor of defendant, finding that defendant's statements did not fall within the protections of the Act because they were made outside of peer review. Plaintiff filed a motion to reconsider, in which he claimed that the peer review process began almost immediately after he performed his surgery and, therefore, the Act was applicable to defendant's statements because they were made after the process began.

¶ 9 Attached to plaintiff's motion was defendant's discovery deposition, in which he stated that the peer review process is automatically triggered when a patient is returned to surgery from recovery because of complications that occur after surgery. Defendant acknowledged that such was the case with plaintiff's patient, because he was called to perform additional

surgery due to the numbness in her leg while she was recovering from her first surgery. He further stated that formal peer review is a committee meeting, but the peer review process encompasses a doctor's investigation of the case prior to that meeting. Defendant explained, however, that while he assumed that plaintiff's surgery would be referred to peer review, he did not know before the meeting whether the committee would, in fact, review that incident because he was not assigned to review plaintiff's case ahead of time. Defendant further stated, with respect to the time frame of his alleged statements to Dr. McGillan and Dr. Glass, that both conversations took place within about a week after defendant performed the bypass on the patient.

¶ 10    On February 24, 2011, the circuit court denied plaintiff's motion and this appeal follows.

¶ 11    Plaintiff now contends, as he did in his motion to reconsider, that the trial court erred in granting summary judgment in favor of defendant because the record shows that defendant violated the Act by telling other doctors that plaintiff had cut the patient's artery during surgery. According to plaintiff, the court erred in concluding that the confidentiality provisions under the Act did not apply to defendant's statements to other doctors.

¶ 12                                        ANALYSIS

¶ 13    Summary judgment is appropriate when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). A trial court's ruling on a motion for summary judgment is reviewed *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389, 909 N.E.2d 830, 833 (2009). Plaintiff in this case does not appear to dispute the fact that defendants' statements were made outside of peer review, but only whether the privilege under the Act was applicable to those statements, which we also review *de novo*. *Niven v. Siqueira*, 109 Ill. 2d 357, 368, 487 N.E.2d 937, 943 (1985).

¶ 14    Section 8-2101 of the Medical Studies Act provides, in pertinent part:

"All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of *** committees of licensed or accredited hospitals or their medical staffs, *** used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." 735 ILCS 5/8-2101 (West 2010).

¶ 15    It is well established that the Act "does not 'protect against disclosure of information generated before a peer review process begins or after it ends' [citation]," and, therefore, "the hospital committee 'must be engaged in the peer review process before the statutory privilege is applicable.' [Citation.]" *Webb v. Mount Sinai Hospital & Medical Center of Chicago, Inc.*, 347 Ill. App. 3d 817, 825, 807 N.E.2d 1026, 1033 (2004). In fact, in *Roach v. Springfield*

-4-

*Clinic*, 157 Ill. 2d 29, 39-43, 623 N.E.2d 246, 250-52 (1993), our supreme court held that the information that an anesthesiologist obtained from nurses after the incident but before the hospital's peer review meeting: (1) was not privileged because it was not " 'information of' any committee, peer-review or otherwise" (emphasis omitted); and (2) "was not transformed into 'information of' a committee simply because the doctor subsequently reported the incident to that committee. *Id*. at 40-41, 623 N.E.2d at 251. The court reasoned that reaching a different result would undermine the purpose of the Act to improve patient care because it would enable hospitals to avoid disclosure of virtually any adverse information known to their staff. *Id.* at 41, 623 N.E.2d at 251. Further, the court rejected the argument that those conversations were tantamount to a committee investigation because at that time, the department had not been notified of the incident, and nothing imputed the actions of the chief anesthesiologist to the department, which was the actual "body" charged with conducting medical reviews at monthly meetings. *Id.* at 42-43, 623 N.E.2d at 251-52; see also *Grandi v. Shah*, 261 Ill. App. 3d 551, 556, 633 N.E.2d 894, 897-98 (1994) (even assuming that a hospital administrator's conversations with a doctor and a nurse to investigate a patient's complaint were part of the hospital's internal review process, those conversations were not privileged because it was not established that the administrator was acting on behalf of any peer review committee).

¶ 16　　Here, it is undisputed that defendant's statements were made in the week following plaintiff's June 24, 2006 surgery and that the first committee meeting in which the incident was reviewed did not take place until February 2007. In fact, plaintiff himself admitted in his own affidavit that the committee had not taken any action at the time of defendant's statements to other doctors. Furthermore, even though defendant was part of the committee that eventually reviewed plaintiff's performance, his statements were not information of that committee, which had not been apprised of the incident when defendant spoke to other doctors about plaintiff's performance. Accordingly, we conclude that the confidentiality provisions under the Act do not apply to defendant's statements.

¶ 17　　Plaintiff, nevertheless, contends that defendant's testimony that the peer review process is triggered when a patient returns to surgery established that defendant's statements were made after that process had already begun and the Act was, therefore, applicable. However, even if the patient's complications were the type of event that would automatically trigger peer review, that would not change our conclusion that the confidentiality provisions under the Act did not apply to defendant's statements to other doctors.

¶ 18　　This court has found that even when statements are made in anticipation of peer review, the confidentiality provisions of the Act are not invoked until there is a committee meeting on that incident. *Berry v. West Suburban Hospital Medical Center*, 338 Ill. App. 3d 49, 53-56, 788 N.E.2d 75, 78-76 (2003). In *Berry*, a medical malpractice case, the plaintiff sought to compel the hospital to produce a letter written by one of the doctors involved in the delivery of a baby to the chairperson of the department of obstetrics and gynecology, relating the events surrounding the delivery. *Id.* at 52, 788 N.E.2d at 77. That doctor subsequently stated in an affidavit that "she understood that the issues raised in her letter would then be addressed by the [h]ospital's quality assurance committee." *Id*. In fact, the chairperson of the department stated in his own affidavit that the letter began the quality assurance review

process of that case because it notified him of the incident. *Id*. at 52-53, 788 N.E.2d at 77-78. Even in light of those affidavits, this court rejected the hospital's argument that the letter to the department's chairperson was protected by the Act. *Id*. at 56, 788 N.E.2d at 80-81. In doing so, the court found that the letter "was not initiated, created or generated by a peer-review committee," and "was written prior to the commencement of the peer-review process as a means to bring *** [the department chairperson's] attention to a potential quality issue." *Id.* at 57, 788 N.E.2d at 81.

¶ 19        Moreover, even assuming, *arguendo*, that the Act was applicable to the statements in question, plaintiff would fare no better because the Act does not give a peer reviewed physician a private right of action for an alleged violation of the Act's confidentiality provisions. As defendant correctly notes, the Act contains no language granting anyone a private right of action for a violation of its confidentiality provisions. In fact, our supreme court has recognized four factors to be considered in determining whether such right of action may be implied. It held:

> " 'Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.' " *Metzger v. DaRosa*, 209 Ill. 2d 30, 36, 805 N.E.2d 1165, 1168 (2004) (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117-18 (1999)).

¶ 20        In applying those factors to the antiretaliation provision of the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)), our supreme court held there was no private right of action to an employee who was retaliated against by an employer. *Fisher*, 188 Ill. 2d at 460, 722 N.E.2d at 1118. The court reasoned that since that statute was enacted to protect nursing home residents from abuse and neglect, that employee was not a member of the protected class and had not suffered an injury that the statute was designed to prevent. *Id*. at 462, 722 N.E.2d at 1118; see also *Metzger*, 209 Ill. 2d at 36-37, 805 N.E.2d at 1168-69 (no implied private right of action from anti-retaliatory provision of the Illinois Personnel Code (20 ILCS 415/19c.1 (West 2002)), which was designed to protect the public by ensuring competent government employees, and the protections afforded to those employees was incidental to the statute's overall purpose); *cf. Calloway v. Kinkelaar*, 168 Ill. 2d 312, 319-20, 659 N.E.2d 1322, 1326 (1995) (private right of action by a woman who had been abducted by her husband was properly implied from the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 1992)), whose purpose was to protect victims of domestic violence). With respect to the fourth factor, our supreme court held in *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 393-96, 718 N.E.2d 181, 185-86 (1999), that there was no implied private right of action under the Lead Poison Prevention Act (410 ILCS 45/1 *et seq*. (West 1996)), since the common law provided an adequate remedy in the form of a negligence action.

¶ 21        With regard to the Medical Studies Act, our supreme court has found that its purpose "is to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach*, 157 Ill. 2d at 40, 623 N.E.2d at 251. The Act also serves "to encourage candid and voluntary studies and

-6-

programs used to improve hospital conditions and patient care or to reduce the rates of death and disease." *Niven*, 109 Ill. 2d at 366, 487 N.E.2d at 942. Thus, the class of persons that the Act was enacted to benefit is the general public, who stand to gain from higher quality health care, not physicians whose performance is under review. Likewise, the injury it was designed to prevent is the increased rates of death and illness that may occur in the absence of candid self-evaluation, not the loss of referrals caused by dissemination of information generated during a physician's peer review self-evaluation process.

¶ 22    While it has been recognized that without the confidentiality provisions of the Act, doctors may be reluctant to engage in strict peer review for fear of malpractice suits or the loss of referrals (*Jenkins v. Wu*, 102 Ill. 2d 468, 480-81, 468 N.E.2d 1162, 1168 (1984)), the main purpose of the Act is to provide better health care by means of candid self evaluation, not to protect those doctors' interests. Thus, similarly to *Metzger*, any benefit that physicians may derive from those confidentiality provisions is incidental, and plaintiff in this case is not a member of the class that the Act was enacted to benefit. Furthermore, not only is the improper disclosure of privileged information under the Act punishable as a Class A misdemeanor (735 ILCS 5/8-2105 (West 2010)), but the common law provides plaintiff with the remedy in the form of a slander action, as plaintiff has also pursued here, if any of the information is slanderous. Thus, we disagree with plaintiff that a private right of action must be implied to ensure compliance with the statute.

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.