No. 2--02--0422

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

MARTY W. KING,                ) Appeal from the Circuit Court

                              ) of McHenry County.

                              )

Plaintiff-Appellant,     )

                              )      

v.                            ) No. 01--LA--345        

                              ) 

SENIOR SERVICES ASSOCIATES,   )                  

INC., and BETTE SCHOENHOLTZ,  ) Honorable

                              ) Michael J. Sullivan,

Defendants-Appellees.    ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court: 

Plaintiff, Marty W. King, appeals from the order of the trial court granting the motion to dismiss of defendants, Senior Services Associates (SSA) and Bette Schoenholtz.  We reverse in part, affirm in part, and remand.

In October 2001, King filed a two-count complaint alleging retaliatory discharge against SSA (count I) and Schoenholtz (count II).  Both defendants filed a motion to dismiss, pursuant to section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2000)), which the trial court granted.  This appeal followed.

King contends that the trial court erred in granting defendants' motion to dismiss.  When the legal sufficiency of a complaint is challenged by a section 2--615 motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true.  
T&S Signs, Inc. v. Village of Wadsworth
, 261 Ill. App. 3d 1080, 1083 (1994).  On review of a section 2--615 dismissal, this court must determine whether the allegations of the complaint, when interpreted in a light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted.  
T&S Signs
, 261 Ill. App. 3d at 1083.  The motion should be granted only if the plaintiff can prove no set of facts to support the cause of action.  
T&S Signs
, 261 Ill. App. 3d at 1083.  This process does not require the court to weigh findings of fact or determine credibility; therefore, this court is not required to defer to the trial court's judgment, and we will review the matter 
de novo
.  
T&S Signs
, 261 Ill. App. 3d at 1084.  

In her complaint, King alleged that Schoenholtz was the executive director of SSA, a not-for-profit corporation engaged in investigating allegations of elder abuse.  SSA was an "Elder Abuse Provider Agency" charged with implementing "the public policy of the State of Illinois, to provide for the protection of the senior citizens of the State of Illinois, and to provide for a reporting of abuse cases, all as reflected in the Elder Abuse and Neglect Act [(Act) (320 ILCS 20/1 
et seq.
 (West 2000))] of the State of Illinois."  King was hired by SSA as a protective service coordinator in June 1996.  In February 1999, King received a report that a senior citizen named Elsie Ottens was being abused and financially exploited by Jacqueline Swaney, another employee of SSA.  King and other SSA employees began an investigation, which led to an investigation by the Kane County sheriff’s department.  Swaney was subsequently indicted and convicted of criminal charges.

SSA and Schoenholtz continued Swaney’s employment after her indictment, expanded her duties, "and otherwise provided protection and assistance" to Swaney. King and other employees advised Schoenholtz that Swaney’s continued employment was inappropriate and "compromised" SSA.  As a "direct and proximate result" of King’s investigation of Swaney, Schoenholtz "began a course of conduct designed to harass and drive" King from her employment at SSA.  Schoenholtz’s conduct included: (1) searching King’s files "solely for the purpose of trying to determine sufficient standards" to terminate King; (2) "[a]rbitrarily" criticizing King and announcing that she was going to take "punitive measures" against King and anyone else involved in the investigation of Swaney; (3) writing a memo suggesting that King should seek other employment; (4) demoting King to the position of ombudsman; and (5) otherwise engaging "in a course of conduct designed to drive [King] from her employment."  King refused to resign, and she was terminated in June 2001, allegedly for failure to properly discharge her duties.  However, this was only a cover, and she was actually terminated for " 'blowing the whistle' " on Swaney.  

King alleged that Illinois has a public policy to provide for the protection of senior citizens and to provide for the reporting of abuse cases.  This policy is reflected in the Act
.  SSA was an Elder Abuse Provider Agency charged with implementing this policy.

In order to establish a cause of action for retaliatory discharge, a plaintiff must demonstrate that she was discharged in retaliation for her activities and that the discharge violated a clear mandate of public policy.  
Fiumetto v. Garrett Enterprises, Inc.
, 321 Ill. App. 3d 946, 949 (2001).  Retaliatory discharge actions have traditionally been allowed in two situations: (1) when an employee is discharged for seeking workers' compensation benefits; and (2) when an employee is discharged for reporting misconduct by the employer.  
Fiumetto
, 321 Ill. App. 3d at 949.  Our supreme court has consistently sought to restrict the common- law tort of retaliatory discharge, emphasizing that an employer may discharge an at-will employee for any or no reason, except when the discharge violates a clearly mandated public policy.  See 
Fisher v. Lexington Health Care, Inc.
, 188 Ill. 2d 455, 467 (1999).

There is no public policy more basic, and nothing more implicit in the concept of ordered liberty, than the enforcement of the state's criminal code.  
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 132 (1981); 
Vorpagel v. Maxell Corp. of America
, 333 Ill. App. 3d 51, 54 (2002).  King alleged that Schoenholtz "began a course of conduct designed to harass and drive [King] from her employment" as a direct and "proximate result of [King's] having promoted, encouraged and aided" the investigation of Swaney.  Eventually, King was terminated for allegedly failing to properly discharge her duties; however, these allegations were a "cover for the purpose of penalizing [King] for 'blowing the whistle' " on Swaney.  Taking these allegations as true, and drawing all reasonable inferences in King's favor, we conclude that King clearly stated a cause of action for retaliatory discharge.  King was terminated for "blowing the whistle" on a co-employee who was eventually convicted of criminal offenses.  

SSA and Schoenholtz argue that, for several reasons, King is not a "whistleblower."  Defendants argue that King could not be a whisteblower because she did not bring allegations of abuse to light; she merely received a report from someone else and passed it along.  This argument has no merit.  We note that there is no requirement that a whistleblower be the first person to discover or report a violation; she only has to cooperate in a criminal investigation.  See 
Vorpagel
, 333 Ill. App. 3d at 54
.
  King received a report that Swaney was abusing and financially exploiting Ottens, investigated the report, then notified law enforcement authorities.  These actions are
 
clearly cooperation in
 
a criminal investigation.  

Defendants also argue that King is not a whistleblower because she did not report any misconduct by SSA or Schoenholtz.  Defendants cite no authority for the proposition that the subject of the report must be the employer or the plaintiff's supervisor.  Indeed, in the seminal 
Palmateer
 case, the supreme court found a cause of action to exist but informed the reader only that the plaintiff supplied information that "an IH [International Harvester] employee might be involved in a violation of the Criminal Code."  
Palmateer
, 85 Ill. 2d at 127.  Presumably, the supreme court would have provided more information on the "IH employee" had that employee's identity been a factor.  We find that no such identity of the parties is required.

Similarly unavailing is defendants' argument that a whistleblower's report must allege wrongdoing connected with employment.  In 
Vorpagel
, the plaintiff cooperated with a criminal investigation into a sexual relationship between his supervisor and the supervisor's daughter, which led to various criminal charges. 
 
This court held that the importance of enforcing criminal laws applies "with equal force whether or not the alleged crime is connected with a plaintiff's employment."  
Vorpagel
, 333 Ill. App. 3d at 54.  King's report of Swaney's misconduct was the action of a whistleblower, and we find no merit to defendants' contention.

Assuming
 
arguendo
 that a common-law cause of action did not lie in this case, the legislature may provide a right of action for retaliatory discharge through the enactment of a statute, and such a right may be either expressly granted or implied in the language of the statute.  See 
Fisher
, 188 Ill. 2d at 459-60.  An implied right of action may be found where: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one that the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.  
Fisher
, 188 Ill. 2d at 460.  In interpreting a legislative enactment, a court must read the statute as a whole and not as isolated provisions.  
Fisher
, 188 Ill. 2d at 463.

The Act gives to the Department on Aging of the State of Illinois (Department) the responsibility to:

"[E]stablish, design and manage a program of response and services for persons 60 years of age and older who have been, or are alleged to be, victims of abuse, neglect, or financial exploitation."  320 ILCS 20/3(a) (West 2000).

To achieve these ends, the Department may contract with and/or fund, among others, a provider agency, which is defined as:  

"[A]ny public or nonprofit agency in a planning and service area appointed by the regional administrative agency with prior approval by the Department on Aging to receive and assess reports of alleged or suspected abuse, neglect, or financial exploitation."  320 ILCS 20/2(h) (West 2000).

It is the responsibility of provider agencies to:

"[A]ssist, to the extent possible, eligible adults who need agency services to allow them to continue to function independently.  Such assistance shall include but not be limited to receiving reports of alleged or suspected abuse, neglect, or financial exploitation, conducting face-to-face assessments of such reported cases, determination of substantiated cases, referral of substantiated cases for necessary support services, referral of criminal conduct to law enforcement in accordance with Department guidelines, and provision of case work and follow-up services on substantiated cases."  320 ILCS 20/3(c) (West 2000).

Such an agency, upon the receipt of a report, is to "conduct a face-to-face assessment with respect to such report."  320 ILCS 20/5(a) (West 2000).  If the agency determines that the report is substantiated, it is to develop a service care plan for the victim.  320 ILCS 20/5(a) (West 2000).  Evidence of crimes is to be referred to the appropriate law enforcement agency.  320 ILCS 20/5(b) (West 2000).  

Section 4.2 of the Act provides, in part:

"Any mandated reporter who makes a report or 
any person who investigates a report under this Act
 shall testify fully in any judicial proceeding resulting from such report ***."  (Emphasis added.) 320 ILCS 20/4.2 (West 2000).

Thus, the provision of services to elders under the Act includes testifying in any legal proceeding that arises from a report of elder abuse, and it is part of the job description of an employee at a provider agency to so testify.  Section 4.1 of the Act provides:

"Employer discrimination.  
No employer shall discharge
, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against 
any employee who makes a good faith oral or written report of suspected elder abuse, neglect, or financial exploitation or who is or will be a witness or testify in any investigation or proceeding
 concerning a report of suspected elder abuse, neglect, or financial exploitation." (Emphasis added.) 320 ILCS 20/4.1 (West 2000).

From this statutory scheme, we conclude that a private right of action for retaliatory discharge is implied for employees of provider agencies.  The legislature has clearly imbued the Department with the responsibility for providing services for persons 60 years and older who have been abused, neglected, or financially exploited.  This provision of services is the public policy of the State of Illinois.  The Department has been given the overall responsibility for the design and management of this program; however, it is the provider agencies with which the Department contracts that actually implement the program and provide services to the people who have been abused, neglected, or exploited.  Chief among these services is the investigation and possible referral for prosecution of reports of abuse, neglect, and exploitation.

However, while the overall purpose of the Act is to provide services for abused, neglected, or exploited persons aged 60 and over, the Act does not provide any remedies for such persons.  The Act merely provides for the apparatus necessary to help such persons seek remedies, such as criminal prosecution, that already exist elsewhere.  The Act was not designed to protect elders from abuse, neglect, and exploitation; the central purpose of the Act is to put in place a system to provide services to such persons.  Thus, any protections provided in the Act are applicable, not to abused, neglected, or exploited elders, but to the persons providing the services to such elders. 

The legislature has seen fit to specifically include in the Act protection from employer discrimination for those persons involved in the reporting and investigation of abuse, neglect, and exploitation.  See 320 ILCS 20/4.1 (West 2000). While this prohibition against employer discrimination is expressly given, nowhere does the Act provide for a specific mechanism for enforcing this protection.  Without such a mechanism, an implied private cause of action is the only method by which an employee involved in providing services to victims of elder abuse and neglect can seek a remedy for discrimination by her employer.  The right to be free from employer discrimination is no right at all if there is no remedy for such discrimination.  Thus, we conclude that the Act contains an implied private cause of action for retaliatory discharge for employees of provider agencies.  

The trial court, in granting the motion to dismiss, relied upon the supreme court's 
Fisher
 decision.
  
In 
Fisher
, two nursing home employees alleged that they were harassed and either fired or driven to resign after they refused to prepare a false report and cooperated with authorities in investigating the death of a nursing home resident.  The supreme court concluded that no private right of action existed for nursing home employees who were retaliated against by their employers.
  
The court reasoned that the  Nursing Home Care Act (210 ILCS 45/1--101 
et seq.
 (West 2000)) was designed to protect nursing home residents, not nursing home employees.  See 
Fisher
, 188 Ill. 2d at 462.  Even the inclusion of a provision prohibiting retaliation against residents, representatives of residents, 
employees
, or agents who reported violations, filed complaints, or testified in actions brought pursuant to that legislation did not persuade the court that such a private cause of action existed for employees.  The court, viewing the Nursing Home Care Act as a whole, concluded that employees were protected only "to advance the Act's central purpose of protecting residents by encouraging employees who become aware of mistreatment to report that mistreatment."  
Fisher
, 188 Ill. 2d at 463.  Furthermore, the court found that the protections applied to residents and their representatives, in addition to employees, and that employees might themselves be the perpetrators of retaliation.  
Fisher
, 188 Ill. 2d at 463-64.  Thus, even the specific protections of section 3--608 of the Nursing Home Care Act (210 ILCS 45/3--608 (West)) sought first and foremost to protect nursing home residents.  
Fisher
, 188 Ill. 2d at 464.

While the analysis provided in 
Fisher
 is useful, the outcome of the case is not controlling here, as 
Fisher
 did not involve the Elder Abuse and Neglect Act.  Furthermore, 
Fisher
 did not involve the reporting of criminal conduct, as the case before us does, but the reporting of tortious conduct.  We have already noted the strong public policy of enforcing the state's criminal code; we are unaware of any such public policy regarding the reporting of tortious acts.  We conclude that the protections provided in section 4.1 of the Elder Abuse and Neglect Act imply a private cause of action for retaliatory discharge for employees of provider agencies.  Thus, the trial court erred in dismissing count I of King’s complaint.

King also contends that the trial court erred in dismissing count II of her complaint, which alleged retaliatory discharge against Schoenholtz.  We disagree.

This court had previously held that claims of retaliatory discharge could lie against a supervisor in addition to the employer.  See, 
e.g.
, 
Fellhauer v. City of Geneva
, 190 Ill. App. 3d 592 (1989).  However, our supreme court has overruled 
Fellhauer
 and has held "that the only proper defendant in a retaliatory discharge action is the plaintiff's former employer."  
Buckner v. Atlantic Plant Maintenance, Inc.
, 182 Ill. 2d 12, 22 (1998). We decline King’s invitation to "reconsider and re-examine" the supreme court’s ruling in 
Buckner
, and conclude that the trial court did not err in dismissing count II of King’s complaint.         

For these reasons, the judgment of the circuit court of McHenry County is reversed in part and affirmed in part, and the cause is remanded.

Reversed in part and affirmed in part; cause remanded.

GROMETER, J., concurs. 

JUSTICE KAPALA, specially concurring:

While I agree with the majority on the reversal as to count I based on the common-law tort of retaliatory discharge and the affirmance as to count II, I respectfully disagree as to that part of the opinion in which we recognize an implied private right of action under the Act.

My analysis is guided by two supreme court cases that I believe control the issue.  In 
Fisher v. Lexington Health Care, Inc.
, 188 Ill. 2d 455 (1999), our supreme court reiterated the four factors to be considered when determining whether an implied private right of action under a statute is appropriate.  
Fisher
, 188 Ill. 2d at 460.  These factors are: (1) is the plaintiff a member of the class for whose benefit the statute was enacted? (2) is the plaintiff's injury one the statute was designed to prevent? (3) is a private right of action consistent with the underlying purpose of the statute? and (4) is implying a private right of action necessary to provide an adequate remedy for violation of the statute?  
Fisher
, 188 Ill. 2d at 460.

As to factor one, I believe it is clear that the Act's intended purpose was to protect elder citizens from abuse.   There is nothing in the legislative history to indicate otherwise.  Additionally, the legislative debates mention support by elder groups while there is no mention of any interest by employees of any organizations involved in addressing elder abuse issues.  Further, in this court's opinion in 
Fisher v. Lexington Health Care, Inc.
, 301 Ill. App. 3d 547 (1998), we expressly recognized that the Act is "intended to safeguard the rights of vulnerable persons of our society (
i.e.
, *** elderly persons ***)."  
Fisher
, 301 Ill. App. 3d at 554.  Thus, I do not believe the Act in general was intended to protect persons such as plaintiff in this case.

Further, my reading of section 4.1 does not alter this conclusion as to the first factor.  While section 4.1 does prohibit discrimination against employees who report elder abuse,  I believe its intended purpose was, consistent with the overall purpose of the Act, to protect elders by encouraging reporting of abuse without fear of retaliation.  In my opinion, any protection employees might receive under section 4.1 is merely ancillary to the purpose of the Act, which is the protection of our elderly from abuse.

I also consider the second factor under 
Fisher
 to weigh in favor of not implying a private right of action.  I believe the injury that the Act, including section 4.1, is designed to prevent is abuse of the elderly.  Perhaps a stronger argument could be made in this case had a plaintiff who is an abused elder sought to pursue an implied private right of action.  In our case, however, we have an employee whose injury, being terminated from her employment, in no way relates to the type of injury with which the Act is concerned, abuse of the elderly.

Moving to factor four, I am particularly persuaded by the supreme court case of 
Abbasi v. Paraskevoulakos
, 187 Ill. 2d 386 (1999).  In that case, the court stated it was unnecessary to analyze in detail all four of the factors because there was no "clear need" to imply a private remedy to effectuate the purpose of the act at issue there.  
Abbasi
, 187 Ill. 2d at 393.  The 
Abbasi
 court further stated that an "application of the fourth factor to this case leads to the same conclusion."  
Abbasi
, 187 Ill. 2d at 393.

The court in 
Abbasi
 went on to conclude that it was not appropriate to recognize an implied right of action because it was not necessary to provide an adequate remedy for violation of the act.  It so held because there was a common-law cause of action to provide such a remedy.  
Abbasi
, 187 Ill. 2d at 393.

Here, as in 
Abbasi
, plaintiff has an adequate remedy, that being the tort of retaliatory discharge.  Thus, to the extent one concludes that there is a need to provide an adequate remedy for a violation of section 4.1, there is no "clear need" to recognize an implied private right of action under the Act.  Similarly, it is unnecessary to do so within the meaning of factor four.

As for factor three, I concede that an implied private right of action would be consistent with the underlying purpose of the Act, as it would discourage employers from violating section 4.1, and thus promote the discovery and prevention of elder abuse.  Nonetheless, I believe the other three factors outweigh factor three in assessing the propriety of whether to recognize an implied private right of action under the Act.

Finally, I would point to the cautionary language in 
Fisher
 wherein the supreme court stated that it has "consistently sought to restrict the common law tort of retaliatory discharge."  
Fisher
, 188 Ill. 2d at 467.  The court further stated that while the case before it did not involve the common-law tort of retaliatory discharge, it found such restrictive language "instructive on the question presented in this case."  
Fisher
, 188 Ill. 2d at 468.  Thus, the court stated that it "must also hesitate to imply such actions under a statute without legislative authority."  
Fisher
, 188 Ill. 2d at 468.

I read this language from 
Fisher
 as another reason not to recognize an implied private right of action under the Act.  It is apparent the supreme court strongly disfavors doing so except in the most compelling situations.  I do not consider the situation here, when viewed in light of 
Fisher
 and 
Abbassi
, to be so compelling.

For all of these reasons, I believe we should not take the additional step of recognizing an implied private right of action under the Act.