2017 IL App (1st) 160844

No. 1-16-0844

Fifth Division
Modified opinion filed February 3, 2017

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

|  |  |  |
|---|---|---|
| ALANA PILOTTO, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiff-Appellant, | ) |  |
|  | ) | No. 15 L 006611 |
| v. | ) |  |
|  | ) | The Honorable |
| URBAN OUTFITTERS WEST, L.L.C., d/b/a | ) | William Gomolinski, |
| ANTHROPOLOGIE, | ) | Judge Presiding. |
|  | ) |  |
| Defendant-Appellee. | ) |  |
|  | ) |  |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Alana Pilotto, brought this civil action against defendant, Anthropologie, a retail store, alleging that she was harmed as a result of defendant's violation of the Restroom Access Act (Act) (410 ILCS 39/1 *et seq.* (West 2014)). Plaintiff is appealing the trial court's order granting defendant's motion to dismiss her first amended complaint, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), on the basis that the Act does not provide a private right of action. For the reasons that follow, we reverse.

¶ 2                                    BACKGROUND

¶ 3          On June 29, 2015, plaintiff filed a two-count complaint against retail stores Walgreens and Anthropologie,[1] alleging that, on separate occasions, she was denied access to an employee restroom despite being entitled to such access under the Act.[2] On September 14, 2015, defendant Anthropologie filed a motion to dismiss count II of the complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)), arguing that the Act does not provide a private right of civil action. Defendant's motion was based on the text of the Act, which does not expressly indicate whether violations can be decided in civil suits, but does provide that violations of the Act are petty offenses that may result in a fine not to exceed $100. The court granted the motion to dismiss without prejudice on October 29, 2015.

¶ 4          On November 25, 2015, plaintiff filed an amended complaint against defendant, alleging the same material facts as the previous complaint, but adding that "410 ILCS 39/5 was enacted for the purpose of preventing the foregoing incident," and that "Plaintiff is a member of the class for whose benefit 410 ILCS 39/5 was enacted. This civil action is consistent with the underlying purpose of this statute and the only adequate remedy for the Plaintiff and others similarly situated."

¶ 5          According to the amended complaint, plaintiff lawfully entered defendant's retail store located in Oak Brook, Illinois, on March 30, 2014. Plaintiff, who suffers from Crohn's Disease, requested to use the employee restroom,[3] and was denied access by an employee,

---

[1] Walgreens settled with plaintiff and was subsequently dismissed from the case.
[2] The Restroom Access Act provides that a retail store that does not normally make a restroom available to the public must allow a customer suffering from an eligible medical condition to use the private employee restroom in times of need. The Act will be detailed further in the analysis section.
[3] On appeal, defendant does not claim that it had a public restroom available for customers to use.

despite showing her Restroom Access card[4] and explaining her need to use the facility. The employee told plaintiff to go to another retail store across the street in a shopping mall to use the restroom. On her way to the other retail store, plaintiff lost control of her bowels and defecated in the presence of customers at the shopping mall. As a result of this occurrence, plaintiff alleged that she experienced extreme emotional distress, did not leave her house for days afterwards, and still experiences fear of not having access to a restroom in public places.

¶ 6     On January 13, 2016, defendant filed a motion to dismiss plaintiff's amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)), again arguing that the Act does not provide a private right of civil action. Plaintiff filed a response to the motion to dismiss on January 22, 2016, arguing that although the text of the Act does not expressly indicate whether violations can be determined in civil suits, a private right of action should be implied in order to provide plaintiff with an adequate remedy for her damages. Plaintiff further argued that the remedy detailed in the text of the Act is not adequate, since it requires the wronged individual to report the incident to authorities, which is a questionable method of encouraging compliance. On February 3, 2016, defendant filed a reply to plaintiff's response, pointing out that plaintiff's amended complaint did not add or delete any factual allegations from the original complaint and that a private right of action is not the only remedy available for plaintiff, since the statute already provides a remedy, decided upon by the General Assembly. On February 22, 2016, the court granted defendant's motion to dismiss, this time with prejudice. This appeal follows.

---

[4] According to the amended complaint, "[p]ursuant to the Restroom Access Act, plaintiff received a Restroom Access card which would allow her access to defendant's employee restroom facility." We note that there does not appear to be an official card issued by the State pursuant to the Act, and the Act does not refer to the showing of a card. However, our research shows that several organizations issue cards explaining that the holder has a medical condition that requires immediate access to a restroom, which can be used to discreetly communicate the holder's issues to others. See, *e.g.*, Crohn's & Colitis, https://www.crohnsandcolitis.com/sign-up (last visited Sept. 30, 2016); The IBD Life, www.theibdlife.com/access (last visited Sept. 30, 2016).

¶ 7                                    ANALYSIS

¶ 8          On appeal, plaintiff claims that the trial court erred in granting defendant's motion to

dismiss pursuant to section 2-615 of the Code because a private right of action should have

been implied in the Act. We note that there exists no precedential[5] case law regarding the

Act, which renders the issue before us a case of first impression. A motion to dismiss

pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint by alleging

defects on the face of the complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). When ruling

on a section 2-615 motion, the relevant question is whether the allegations in the complaint,

construed in a light most favorable to the plaintiff, are sufficient to state a cause of action

upon which relief may be granted. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). A motion to

dismiss should not be granted "unless it is clearly apparent that no set of facts can be proved

that would entitle the plaintiff to relief." *Tedrick v. Community Resource Center, Inc.*, 235 Ill.

2d 155, 161 (2009). Illinois is a fact-pleading state; conclusions of law and conclusory

allegations unsupported by specific facts are not sufficient to survive dismissal. *Anderson v.

Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). Appellate review of a dismissal pursuant to

section 2-615 is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112,

116 (1993). *De novo* consideration means we perform the same analysis that a trial judge

would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

---

[5]There is a federal district court case interpreting the Act, *Kindle v. Fifth Third Bank*, No. 1:14 CV 6502, 2015 WL 5159890 at *1 (N.D. Ill. Sept. 1, 2015), which we discuss below. However, that case is not precedential and is not binding on this court. See *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 127 (2001) (noting that "lower federal court decisions are not binding on Illinois courts, but may be considered persuasive authority"). Additionally, 12 other states have enacted similar legislation to the Act, but none have any case law interpreting the Act available on research databases.

¶ 9                                    I. Restroom Access Act

¶ 10        The Restroom Access Act mandates that a retail establishment shall allow a customer to use the employee toilet facilities during normal business hours under certain circumstances. Section 10 of the Act sets forth the duty imposed by the Act and provides, in full:

> "A retail establishment that has a toilet facility for its employees shall allow a customer to use that facility during normal business hours if the toilet facility is reasonably safe and all of the following conditions are met:
>
> (1) The customer requesting the use of the employee toilet facility suffers from an eligible medical condition or utilizes an ostomy device.
>
> (2) Three or more employees of the retail establishment are working at the time the customer requests use of the employee toilet facility.
>
> (3) The retail establishment does not normally make a restroom available to the public.
>
> (4) The employee toilet facility is not located in an area where providing access would create an obvious health or safety risk to the customer or an obvious security risk to the retail establishment.
>
> (5) A public restroom is not immediately accessible to the customer." 410 ILCS 39/10 (West 2014).

On appeal, defendant does not argue that the requirements of the statute were not satisfied at the time that plaintiff requested to use defendant's employee restroom in the instant case.[6]

---

[6] We note that in its petition for rehearing, defendant suggests that it will be challenging whether the requirements of the Act were satisfied when the case is remanded to the trial court. However, it had not done so before this court or during the proceedings leading to the instant appeal. Defendant's potential future challenges to plaintiff's complaint do not affect our analysis at this early stage of the proceedings.

¶ 11    The Act also contains two provisions relating to liability and violations of the Act. First, section 15 is entitled "Liability" and provides, in relevant part:

"(a) A retail establishment or an employee of a retail establishment is not civilly liable for any act or omission in allowing a customer that has an eligible medical condition to use an employee toilet facility that is not a public restroom if the act or omission meets all of the following:

(1) It is not willful or grossly negligent.

(2) It occurs in an area of the retail establishment that is not accessible to the public.

(3) It results in an injury to or death of the customer or any individual other than an employee accompanying the customer." 410 ILCS 39/15(a) (West 2014).

¶ 12    Additionally, section 20 is entitled "Violation" and provides, in full:

"A retail establishment or an employee of a retail establishment that violates Section 10 is guilty of a petty offense. The penalty is a fine of not more than $100." 410 ILCS 39/20 (West 2014).

¶ 13    The Act is otherwise known as "Ally's Law," a tribute to the young girl who inspired the bill. Representative Kathleen Ryg introduced this bill as a response to the needs of thousands of state citizens suffering from Crohn's Disease and other irritable bowel conditions. 94th Ill. Gen. Assem., House Proceedings, Apr. 14, 2005, at 195 (statements of Representative Ryg). Her aim for the bill was to enable citizens suffering from irritable bowel conditions to have access to a restroom when they need it. 94th Ill. Gen. Assem., House Proceedings, Apr. 14, 2005, at 196 (statements of Representative Ryg). After passage by the House and Senate, the

bill was approved by the governor on August 4, 2005, and immediately became effective law.

¶ 14                                   II. Common-Law Claim

¶ 15        In the case at bar, the parties argue about whether a private right of action is implied through the Act. However, before considering this argument, we must first consider the theory under which plaintiff is proceeding in her amended complaint. While defendant in its motion to dismiss, and the court in granting the motion, focused on the issue of whether the Act provides for a private cause of action, the language of the amended complaint indicates that the basis for plaintiff's complaint was a common-law cause of action.[7] Our supreme court has noted that it can be error to simply focus on whether the statute implies a private right of action, because "[t]he four-part *Noyola* test is the analysis that this court uses when the plaintiff alleges a cause of action that originates in a statute, but the statute does not set forth an express right of action. [Citation.] It has no application when the plaintiff is proceeding on a common law theory." *Cowper v. Nyberg*, 2015 IL 117811, ¶ 20. In the case at bar, plaintiff's complaint was grounded in the common law, making the analysis of whether there was an implied private right of action unnecessary or, at the very least, premature. See *Cowper*, 2015 IL 117811, ¶ 20 ("Here, plaintiff was proceeding on a common law negligence theory, under a long-established rule that public officials may be held liable for breaches of ministerial duties. Plaintiff's cause of action did not originate in the statute; the statute merely set forth the particular ministerial duty that was alleged to have been breached.").

---

[7] Defendant appears to have recognized this in its motion to dismiss plaintiff's initial complaint, when it characterized plaintiff's complaint as one for intentional infliction of emotional distress. However, the analysis focused on whether the violation of the Act gave rise to a private cause of action, not whether the violation can serve as the basis for the common-law claim.

¶ 16    Plaintiff's amended complaint appears to be based on either the common-law tort of intentional infliction of emotional distress or the common-law tort of negligent infliction of emotional distress, based on her allegations that plaintiff's conduct caused her "extreme emotional distress." As noted, when ruling on a section 2-615 motion, the relevant question is whether the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted (*Canel*, 212 Ill. 2d at 317), and a motion to dismiss should not be granted "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief" (*Tedrick*, 235 Ill. 2d at 161). Thus, we must consider whether plaintiff has stated a cause of action under either theory before determining whether dismissal was appropriate.

¶ 17    First, to state a cause of action for intentional infliction of emotional distress, "[t]he plaintiff must plead facts which indicate: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 20 (1992). In considering whether conduct as pleaded could be considered extreme and outrageous, "of serious consideration is a defendant's awareness that the plaintiff is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress." *McGrath v. Fahey*, 126 Ill. 2d 78, 89-90 (1988). In the case at bar, plaintiff's complaint alleges that "[k]nowing that plaintiff had a problem with bowel control and seeing her Medical Alert Restroom Access Required Card, defendant still denied her

8

access to the store's facilities," in violation of defendant's obligations under the Act. At this early stage of the proceedings, plaintiff's allegations are sufficient to constitute extreme and outrageous conduct, especially given plaintiff's allegations that she explained her particular "physical *** condition or peculiarity" (*McGrath*, 126 Ill. 2d at 90) to defendant's employee. Furthermore, plaintiff's complaint alleges that after defendant's employee directed her to a store across the street, plaintiff "explained her need to use the facility immediately" but was still denied access to defendant's facilities. Thus, plaintiff's complaint sufficiently alleges that defendant's employee knew the likely results of the denial, namely, public defecation, and nevertheless refused access. Finally, plaintiff's complaint alleges severe emotional distress, including allegations that plaintiff did not leave her house for days and "still experiences trepidation being in public places for fear she will not be able to use the restroom." While such allegations might not be sufficient were this an isolated incident, the character of plaintiff's condition results in the repeated need for immediate access to a restroom. Indeed, as noted, the purpose of the Act is to provide immediate restroom access for those with medical conditions requiring such access (410 ILCS 39/10 (West 2014)), which recognizes that these are not isolated incidents. Thus, plaintiff's complaint alleges that defendant's actions in this instance affected her ability to conduct her daily life. Therefore, we conclude that, at this early stage in the proceedings, plaintiff has sufficiently alleged a cause of action for intentional infliction of emotional distress.

¶ 18    With respect to negligent infliction of emotional distress, "[a] plaintiff claiming to be a direct victim of negligently inflicted emotional distress must establish the traditional elements of negligence: duty, breach, causation and injury." *Cooney v. Chicago Public Schools*, 407 Ill. App. 3d 358, 363 (2010) (citing *Corgan v. Muehling*, 143 Ill. 2d 296, 306

(1991)). "Duty is defined as 'a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another.' " *Kotarba v. Jamrozik*, 283 Ill. App. 3d 595, 597 (1996) (quoting *Rabel v. Illinois Wesleyan University*, 161 Ill. App. 3d 348, 356 (1987)). "A tort duty can derive either from the common law or from statute." *People ex rel. Department of Labor v. Valdivia*, 2011 IL App (2d) 100998, ¶ 12 (citing *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.*, 223 Ill. App. 3d 444, 452 (1991)). "A statute may create a duty expressly, or it may do so impliedly where it is 'designed to protect human life or property.' " *Rommell v. Illinois State Toll Highway Authority*, 405 Ill. App. 3d 1124, 1128 (2010) (quoting *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991)).

¶ 19        In the case at bar, the Act expressly imposes a duty on retail establishments that have employee toilet facilities to permit customers to use those employee facilities in certain circumstances, as we have detailed above. See 410 ILCS 39/10 (West 2014). Furthermore, we note that the language of the Act expressly contemplates civil liability for violations of the Act through section 15, which provides limited immunity for injury caused by a retailer's compliance with the Act. See 410 ILCS 39/15(a) (West 2014). There would be no need for immunity if there was no civil liability for a retailer's conduct under the Act. Thus, section 10 of the Act imposes a duty on a retailer such as defendant to provide restroom access to an individual such as plaintiff.

¶ 20        In the instant case, plaintiff has set forth all of the necessary elements for a negligence action in her amended complaint. First, plaintiff's complaint alleges that defendant is a retail establishment subject to the Act and that she was entitled to use the employee restroom pursuant to the statute. Accordingly, plaintiff alleged that defendant owed her a duty under the Act. Plaintiff also alleged that defendant breached that duty by refusing to permit her

access to an employee restroom, instead directing her to another store across the street, which resulted in her defecating in the presence of customers of the shopping mall. Plaintiff further alleged that defendant's actions caused her "extreme emotional distress." Thus, plaintiff has stated a cause of action for negligent infliction of emotional distress and the trial court erred in dismissing her complaint under section 2-615 of the Code.

¶ 21                                    III. Implied Private Right of Action

¶ 22        Furthermore, even if there was no applicable common-law cause of action, we agree with plaintiff that a private right of action can be implied from the statute. A court may determine that a private right of action is implied in a statute that lacks explicit language regarding whether a private right of action shall be allowed. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). In order to find an implied private right of action, a court must find that (1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to prevent, (3) a private right of action is consistent with the underlying purpose of the statute, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Fisher*, 188 Ill. 2d at 460.

¶ 23                                    A. First and Second Elements

¶ 24        The first two elements, that plaintiff is a member of the class for whose benefit the statute was enacted and the injury is one the statute was designed to prevent, are factually satisfied and uncontested by defendant. The Act was created for the benefit of a class of citizens who suffer from an eligible medical condition. 410 ILCS 39/10 (West 2014). Plaintiff suffers from Crohn's Disease, which is one of the eligible medical conditions covered by the Act. 410 ILCS 39/5 (West 2014) (listing eligible medical conditions as "Crohn's disease,

ulcerative colitis, any other inflammatory bowel disease, irritable bowel syndrome, or any other medical condition that requires immediate access to a toilet facility"). Therefore, it is clear that plaintiff is a member of the class that the Act is designed to benefit. The Act is also designed to prevent uncontrollable defecation or urination from occurring in public by allowing immediate private restroom access to those who suffer from an eligible medical condition. 410 ILCS 39/10 (West 2014). Here, after plaintiff was denied access to defendant's employee restroom, she uncontrollably defecated in public view while trying to reach another retail store to use the restroom. It is clear from these facts that plaintiff suffered an injury that the Act was designed to prevent. Therefore, the first two elements for imposing a private right of action are satisfied.

¶ 25                                    B. Third Element

¶ 26        Unlike the first and second elements, the parties dispute whether the third and fourth elements are satisfied. The third element is satisfied if it is determined that a private right of action is consistent with the underlying purpose of the statute. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). We note that other courts do not necessarily discuss this factor in detail, instead discussing it together with the fourth element. However, in this case, we find a separate discussion helpful to our analysis of the issue.

¶ 27        In the case at bar, we find that implying a private right of action is consistent with the underlying purpose of the Act and also note that such a private right would not adversely affect any other provision within it. For instance, in *Metzger v. DaRosa*, 209 Ill. 2d 30, 39 (2004), our supreme court found that an implied private right of action for a government whistleblower reprimanded after reporting statutory violations was inconsistent with the Illinois Personnel Code (20 ILCS 415/1 *et seq.* (West 2002)). In that case, the court found

that the underlying purpose of the statute was to ensure government employee competency, and in doing so, the statute protected employees who report such violations from unjust retaliation. *Metzger*, 209 Ill. 2d at 37. In order to carry out this purpose, the statute outlined procedures for the State to review whether an employee who was reprimanded after reporting a violation was unjustly disciplined. *Metzger*, 209 Ill. 2d at 39. The court found that implying a private right of action would have been inconsistent with the express procedures for carrying out the underlying purpose of the statute, since it would have stripped the State of its independent authority to determine whether the reprimand was retaliation or appropriate management and would have, instead, given that authority to the courts. *Metzger*, 209 Ill. 2d at 39.

¶ 28     By contrast, in *King v. Senior Services Associates, Inc.*, 341 Ill. App. 3d 264, 266-67 (2003), an implied private right of action under the Elder Abuse and Neglect Act (Elder Act) (320 ILCS 20/1 *et seq.* (West 2000)) was upheld by the appellate court. In that case, the plaintiff alleged that she was terminated from her employment at Senior Services Associates (SSA) because she reported another SSA employee for abusing and financially exploiting a senior citizen. The plaintiff's argument was premised on the Elder Act, which provides that the Illinois Department of Aging can fund private agencies—such as SSA—to implement the policies of the Elder Act, and that those agencies' employees who report cases of elder abuse are protected from retaliatory discharge. *King*, 341 Ill. App. 3d at 269. However, the Elder Act says nothing about available remedies for those employees alleging retaliatory discharge after reporting elder abuse. *King*, 341 Ill. App. 3d at 270. The court found that an implied private right of action for employees of these agencies alleging retaliatory discharge was appropriate under the Elder Act. *King*, 341 Ill. App. 3d at 270. The majority opinion did not

engage in an express analysis of whether implying a private right of action was consistent with the underlying purpose of the statute, but the ultimate holding that a private right of action was available to the plaintiff necessarily implied that the majority concluded that implying a private right of action was indeed consistent. However, an analysis of this element was conducted by Justice Kapala in his special concurrence.[8] In his special concurrence, Justice Kapala reasoned that an implied private right of action would be consistent with the underlying purpose of the statute because it would discourage these agencies from reprimanding employees who report elder abuse, which would serve to promote the discovery and prevention of elder abuse. *King*, 341 Ill. App. 3d at 273 (Kapala, J., specially concurring).

¶ 29     In the matter before us, as noted, the underlying purpose of the Act is to ensure that citizens suffering from irritable bowel conditions have immediate restroom access when they need it. 94th Ill. Gen. Assem., House Proceedings, Apr. 14, 2005, at 196 (statements of Representative Ryg). The only process expressly set forth in the Act to remedy violations of the Act is the imposition of a petty offense fine of not more than $100. 410 ILCS 39/20 (West 2014). The procedures outlined in the statute in *Metzger* were important for serving the underlying purpose of the statute, and would have been rendered ineffective by implying a private right of action. In the present case, it cannot be said that the express petty offense remedy would be rendered ineffective by implying a private right of action. Even if we find a private right of action, the State can still pursue the petty offense penalty against a retailer who violated the Act, and the penalty would retain the same amount of value in terms of

_____

[8]Justice Kapala concurred with the majority for every issue discussed in the majority opinion, except for the finding that an implied private right of action was appropriate under the Elder Act because, although he found that the third element was satisfied, he disagreed with the majority's finding that the fourth element was satisfied. *King*, 341 Ill. App. 3d at 272-73 (Kapala, J., specially concurring).

ensuring compliance with the Act as it had without the implied private right of action. Without express language in the Act prohibiting a private right of action or an established procedure that would be impeded, there is nothing that an implied private right of action would be at odds with. Moreover, in accordance with Justice Kapala's special concurrence in *King*, finding an implied private right of action in this case would discourage retailers from refusing to comply with the Act, which would serve to ensure that citizens suffering from irritable bowel conditions have immediate access to a restroom when they need it.

¶ 30     Plaintiff also argues that it would be inconsistent for the legislature to provide that a private right of civil action is available against retailers' willful acts or omissions when complying with the Act, but not available in cases where retailers refuse to comply with the Act. For support, she emphasizes the liability provision in the Act, but mischaracterizes the language of the provision by asserting that it expressly provides a civil remedy to customers injured by retailers' willful acts or omissions while in compliance with the statute. The plain language of the liability provision expressly immunizes retailers from civil liability for any act or omission in complying with the Act, if the act or omission (1) is not willful or grossly negligent, (2) occurs in a nonpublic area of the store, and (3) results in injury or death to the customer. 410 ILCS 39/15 (West 2014). The provision expressly covers the situation in which complying retailers are excluded from civil liability, but, contrary to plaintiff's assertion, has no language expressly granting a private right of action to customers when the complying retailer's acts constitute willful or gross negligence. Nevertheless, the essence of plaintiff's argument is that since a complying retailer is shielded from civil liability as long as the expressed requirements are satisfied, it is implied that a complying retailer is subject to civil liability if at least one of the requirements is not satisfied. Therefore, it appears that

plaintiff's argument is that since the legislature intended for an implied private right of action to be available to customers injured as a result of a retailer's willful or grossly negligent acts or omissions while complying with the Act, finding an implied private right of action for situations where a retailer refuses to comply with the Act is logically consistent with the underlying purpose of the Act.

¶ 31    We find plaintiff's argument to be persuasive. It would make no sense for the statute to be read in such a way that a retailer can be held civilly liable for its actions when *complying* with the Act, but could not be held civilly liable for *not complying* with the Act at all. "In construing a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results [citation], and we will not, absent the clearest reasons, interpret a law in a way that would yield such results [citation]." *Nelson v. Artley*, 2015 IL 118058, ¶ 27. Assuming *arguendo* that we found an implied private right of action to be inconsistent with the Act, the only way a retailer could possibly be exposed to civil liability would be through compliance with the Act. With this in mind, it is not hard to imagine a retailer deciding to never comply with the Act in order to avoid any possibility of civil liability, instead opting to take the chance of being fined no more than $100 for noncompliance. This would directly compromise the underlying purpose of the Act, which, as previously stated, is to ensure that citizens suffering from irritable bowel conditions have immediate restroom access when they need it. 94th Ill. Gen. Assem., House Proceedings, Apr. 14, 2005, at 196 (statements of Representative Ryg). Plaintiff's argument, together with the cited case law, convinces us that an implied private right of action is consistent with the underlying purpose of the Act.

¶ 32    While defendant does not expressly argue that this element weighs in its favor, defendant does emphasize the text of the violation provision in the Act, which expressly states that a

violation is considered a petty offense. However, as noted, there is no express language that prohibits a private right of action, nor is there any expressed violation procedure that a private right of action would obstruct. The State would still be able to pursue the express petty offense remedy against retailers who violate the Act. In addition, defendant's argument does nothing to assert that implying a private right of action would undermine the underlying purpose of the Act. Therefore, we find that defendant's argument is unpersuasive and conclude that implying a private right of action is not inconsistent with the underlying purpose of the Act.

¶ 33                                C. Fourth Element

¶ 34        Finally, the fourth element is satisfied if it is shown that a private right of action is necessary to provide an adequate remedy to individuals injured as a result of violations of the statute. *Fisher*, 188 Ill. 2d at 460. A private right of action has only been implied in cases where a statute would be ineffective without the implication. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 395 (1999).

¶ 35        In the case at bar, the Act expressly provides that a violation is a petty crime, punishable by a fine not to exceed $100. 410 ILCS 39/20 (West 2014). However, plaintiff argues that a fine capped at $100 is not adequate to encourage compliance with the Act among retail stores. In addition, plaintiff points out that the only way to enforce a violation would be for the wronged individual to report the incident to the police department. The crux of plaintiff's reasoning is that the wronged individual is unlikely to report such an embarrassing incident to the authorities, and requiring the individual to testify about the embarrassing incident in court in order to secure a small fine for the State is not palatable.

¶ 36     At the outset, we find that plaintiff's reasoning that a wronged individual is unlikely to pursue the expressed remedy out of fear of having to testify about the incident is unpersuasive. If this court were to imply a private right of action, there is no doubt that the plaintiff would still be required to testify about the embarrassing incident and could potentially be obligated to reveal even more embarrassing information throughout the discovery process. The wronged individual cannot pursue any claim regarding a violation of the Act without divulging embarrassing information. It is inevitable that plaintiff would have to talk about the embarrassing incident in order to pursue any type of remedy.

¶ 37     However, we agree with plaintiff that an individual harmed by a violation of the Act would be reluctant to divulge embarrassing information to local authorities in order to pursue the expressed petty offense remedy and add that the petty offense remedy does nothing to redress the injuries that plaintiff has already sustained. Such was the case in *Corgan v. Muehling*, 143 Ill. 2d 296, 300 (1991), where the plaintiff brought an action under the Psychologist Registration Act (Ill. Rev. Stat. 1981, ch. 111, ¶ 5301 *et seq.*), alleging that the defendant, who lied about being a registered psychologist, began a sexual relationship with her "under the guise of therapy." The Psychologist Registration Act provides that a violation of the statute is a public nuisance. *Corgan*, 143 Ill. 2d at 312. The Director of the Department of Professional Regulation or the State's Attorney in the county where the nuisance occurs may file a complaint in the name of the People of the State of Illinois requesting an injunction against the person unlawfully acting as a psychologist to stop performing such unlawful acts. *Corgan*, 143 Ill. 2d at 312. Despite the absence of express language regarding a private right of action, our supreme court held that an implied private right of action was the only way the statute could be enforced because it was unlikely that an injured patient

would pursue claims through the administrative or criminal justice system without the opportunity for a tangible award in order to be made whole. *Corgan*, 143 Ill. 2d at 315. We find the present case to align with *Corgan*, in that the petty offense remedy in the Act does nothing to make the plaintiff whole again for the harm that she has already sustained. The lack of opportunity for redress, as well as the reluctance to divulge embarrassing information, lessens the likelihood that an individual harmed by a violation of the Act would be motivated to pursue the express remedy. This lack of motivation would render the statute unenforceable as a practical matter.

¶ 38    In addition, we note that the petty offense remedy in the present case is even more inadequate than the injunction available to the plaintiff in *Corgan*. An injunction would at least serve to ensure that defendant would be obligated by a court order to comply with the Act, making it more likely that, should plaintiff desire to visit the store in the future, she would feel comfortable knowing that a court has specifically addressed defendant's noncompliance and that she is much more likely to be granted access to the employee restroom in the event that she requires it. However, the imposition of the petty offense fine is unlikely to make the plaintiff feel comfortable in visiting the store in the future, since should defendant again deny plaintiff access to the employee restroom when she needs it, defendant would not be subjected to an increased penalty, and would still only risk the imposition of a small fine. In sum, the express remedy does nothing to make plaintiff whole again after sustaining harm, nor to ensure that plaintiff can feel comfortable visiting defendant's retail store in the future.

¶ 39    We also recognize the inadequacy of the petty offense remedy by distinguishing it from case law where the expressed remedies in a statute were deemed adequate. In *Rekosh v.*

*Parks*, 316 Ill. App. 3d 58, 61-62 (2000), the plaintiffs brought an action under the Funeral Directors and Embalmers Licensing Code (225 ILCS 41/1-1 *et seq.* (West 1998)) alleging, *inter alia*, that they suffered severe emotional distress as a result of the defendants' violations of the statute. The statute expressly provided that a funeral home that violated any provision may be punished by fines and suspension or revocation of its license, and also that funeral homes may be subjected to regular inspections in order to verify compliance with the statute and may be investigated for any suspicion of a violation. *Rekosh*, 316 Ill. App. 3d at 74. The court concluded that it could not say that the expressed remedies in the statute were so deficient that implying a private right of action was necessary. *Rekosh*, 316 Ill. App. 3d at 74. See also *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274 ¶¶ 44-46 (revocation of the cemetery's license, felony criminal penalties, and fines for violations of the Cemetery Care Act (760 ILCS 100/1 *et seq.* (West 2012)) were adequate and did not necessitate implying a private right of action).

¶ 40       We are aware of the differences in the issues between the statute involved in *Rekosh* and the Restroom Access Act, but the lack of relevant case law forces us to draw comparisons between inherently different statutes. The statute in *Rekosh* went far beyond providing one simple remedy, instead providing several different remedies in order to ensure compliance among funeral homes. In the case at bar, the Act only expressly provides one remedy, a fine not to exceed $100. There is nothing regarding investigations or any other sanctions that would seek to ensure that the Act is not repeatedly violated. Defendant, a nationwide retail store, certainly has the financial capability to simply refuse to comply with the Act each time it is approached by a customer with an irritable bowel condition, since the maximum penalty that can be assessed for each violation is $100. While a funeral home that violates the statute

at issue in *Rekosh* may be subjected to sanctions that could impact its ability to continue operation as a business, a retail store that refuses to comply with the Act would not even notice the impact of the petty offense penalty, especially one such as defendant, who has a nationwide presence on the retail market. It is this distinction that persuades us that the expressed remedy in the Act is inadequate to effectuate the purpose of the statute.

¶ 41     We find defendant's arguments to the contrary to be unpersuasive. Defendant argues that an implied private right of action is not necessary to provide an adequate remedy, since the Act already expresses a different remedy, and this expressed remedy is the extent of what the legislature intended to be adequate for enforcement. While the plain language of the Act is evidence that it is the only remedy intended by the legislature, it is not dispositive as to that issue, especially since the Act does appear to contemplate some form of civil liability in certain circumstances, as discussed above. There have been several instances where an Illinois court has determined that the remedies expressed by the legislature in a statute are not adequate to enforce compliance, necessitating the implication of a private right of action. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 185 (1978) (implying a private right of action under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, ¶ 138.1 *et seq.*) is necessary to effectuate the purpose of the statute in part because it is conceivable that employers would risk the threat of the expressed small fine in order to escape their responsibility under the statute); *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 309 (1992) (implied private right of action is appropriate under the X-Ray Retention Act (Ill. Rev. Stat. 1987, ch. 111½, ¶ 157-11), since no administrative remedies were specified and requiring the Public Health Department to hire an inspector to monitor hospital compliance is not efficient). In *Corgan*, 143 Ill. 2d at 314, our supreme court, finding that an implied private right of action

was appropriate, noted that "nothing in the statute suggests that the legislature intended to limit the available remedies to those administrative or criminal measures specifically enumerated within the [Psychologist Registration] Act." If the Act in the case at bar had language limiting the available remedies to what is expressed in its violation provision, defendant's plain language argument would be dispositive to the issue. However, in the absence of such language, the plain language argument is not as persuasive as defendant asserts.

¶ 42     Furthermore, defendant argues it is not up to this court to determine whether the legislature's intent is different than what is expressed by the language of the statute. However, defendant's argument would mean that there could never be an implied private right of action, since such an implied right necessarily means that there is no express language granting such a right. Such an argument is inconsistent with the numerous cases finding an implied private right of action in statutes that already have express remedies incorporated within the text, some of which have been discussed in this analysis. Defendant's argument directly contrasts with judicial precedent regarding an implied private right of action. In addition, we must note that this court is not invalidating the expressed remedy in the Act. Instead, we are simply determining that the expressed remedy is not adequate to enforce the Act.

¶ 43     Defendant cites federal case law from the northern district of Illinois in order to support the textual argument, which happens to be the only case to date that has ruled on whether an implied private right of action is appropriate for the Act. In *Kindle v. Fifth Third Bank*, No. 1:14 CV 6502, 2015 WL 5159890 at *1 (N.D. Ill. Sept. 1, 2015), the plaintiff was a customer in the defendant's bank and requested to use the employee restroom, although it is not clear

from what kind of medical condition he suffered. After the plaintiff was denied access to the employee restroom, he soiled his clothing while leaving the premises. *Kindle*, No. 1:14 CV 6502, WL 5159890 at *1. The district court ruled that the plaintiff's claim failed as a matter of law since the Act does not have language providing a private right of action. *Kindle*, No. 1:14 CV 6502, WL 5159890 at *4.

¶ 44   We find defendant's case law to be unpersuasive. At the forefront, it is a federal district court case, thus having no precedential influence over our decision. *Ryan*, 198 Ill. 2d at 127. In addition, it is important to note, as plaintiff points out in her brief, that the plaintiff in *Kindle* was representing himself *pro se* and does not appear to have argued for an implied private right of action. As a result, the court did not address any of the four elements for finding an implied private right of action. Thus, despite the factual similarities to the present case, *Kindle* offers no material guidance for us to follow.

¶ 45   As a final matter, we must also consider whether there would be any other adequate remedy available to the plaintiff in this situation. Illinois courts have found that an implied private right of action is not appropriate in situations where a common law cause of action can also be brought by the plaintiff. See *Abbasi*, 187 Ill. 2d at 393 (the plaintiff's complaint under the Lead Poisoning Prevention Act (410 ILCS 45/1 *et seq.* (West 1996)) would be identical to the plaintiff's pending common law negligence claim); *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 687 (2010) (the plaintiff could pursue a common law cause of action such as nuisance that would have the same effect as implying a private right of action under the Livestock Management Facilities Act (510 ILCS 77/1 *et seq.* (West 2008))). In the case before us, the only common law cause of action that could potentially be feasible for plaintiff would be for either intentional or negligent infliction of

emotional distress, as discussed in the first part of our analysis. However, as noted at the beginning of our analysis of the issue, our analysis on the implied private right of action is based on the premise that a common-law cause of action is unavailable. In that situation, therefore, we conclude that no other adequate cause of action is available for plaintiff to be made whole.

¶ 46                                                    CONCLUSION

¶ 47         For the foregoing reasons, we find that the trial court erred in granting defendant's motion to dismiss on the basis that plaintiff did not have a private right of civil action under the Restroom Access Act.

¶ 48         Reversed.